City of Chicago, a Municipal Corporation, Plaintiff-Appellant, v. Max Zellers, Defendant-Appellee.

Gen. No. 50,027.

First District, Third Division.

September 23, 1965.

Raymond F. Simon, Corporation Counsel, of Chicago (Sydney R. Drebin and Marsile J. Hughes, Assistant Corporation Counsel, of counsel), for appellant.

Jerome Berkson, of Chicago, for appellee.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

This action was started by the City of Chicago filing a quasi-criminal statement of claim to recover a penalty

against the defendant, Max Zellers, for the violation of a municipal ordinance. The claim alleged that Zellers owned certain premises in Chicago on which there was a dangerous excavation, and that he had failed to fill it in or to barricade it. The defendant answered that the City had issued a building permit for the erection of a residence on the premises but that after the excavation had been started the City revoked the permit. He alleged that this prevented him from completing the construction of the building, that the property remained in the condition complained of because of the revocation, that the revocation was illegal and that the zoning ordinance upon which it was based was void and unconstitutional as it applied to his property.

The defendant also filed a counterclaim which prayed for a declaratory judgment as to the validity of the ordinance, for an injunction and for damages. In its responsive pleadings the City admitted that the permit had been issued but stated that it was revoked when it was discovered that the building plans did not comply with the City's zoning ordinances. The City further alleged that Zellers knew the permit was wrongfully issued and that his application was misleading and fraudulent.

After a nonjury trial the court entered an order which found that: the revocation was wrongfully issued; the applicable zoning ordinances were invalid insofar as they pertained to the defendant's property; the defendant had been damaged by the City's action but was himself guilty of maintaining the dangerous excavation. The City was ordered to reinstate the permit, was enjoined from interfering with the completion of the building and was ordered to pay the defendant $85. The defendant was fined $25. The City has appealed from the portions of the order adverse to it

and the defendant has cross-appealed from the portion of the order adverse to him.

Zellers who was an experienced real estate broker, builder and speculator, purchased the lot in September 1963 and had plans drawn for a proposed single family dwelling. The plans did not conform to the City's zoning ordinances and a variation was needed before he could proceed. Zellers presented these plans to the Board of Zoning Appeals in October but the board denied the requested variation.

Later, according to his testimony, he had a conversation with an employee of the City of Chicago's Building Department. He asked the employee if he would mark on a sketch of the lot the area where he thought that a single family dwelling might successfully be constructed. On the basis of this sketch Zellers had a second set of plans drawn, took them to the building department and secured a building permit. Zellers lost no time in commencing the excavation. He received the permit in the morning and started excavating at 1:30 p. m. Shortly after the work started residents of the neighborhood, who had been present at the board hearings and knew that Zellers had been denied a variation, called the building department and protested. Police stopped the job on the order of the department and Zellers was served with written notice that the permit issued to him that morning was being revoked.

The uncompleted excavation was on the front part of the lot. It was about 8 feet from the public sidewalk. It was 8 feet deep at the sidewalk side, 4 feet deep at the rear and was 15 feet square. It was left unprotected from April 10, 1964, the day the permit was revoked, until June 30, 1964, the day before the trial commenced. On the eve of the trial some sort of fence was erected around the perimeter of the ex-

cavation. On occasions, following storms, rain water remained at the bottom of the hole for days at a time. There was testimony that the water was deep enough for a small child to have drowned. The trial court found that Zellers had maintained the property in a dangerous condition and imposed the $25 fine. The City, however, was ordered to pay him $85 to reimburse him for the cost of the fence.

 The Municipal Code of Chicago, Part VI, Health and Sanitation, chap 99, Nuisances, sec 99.4, provides in part: "No . . . yard, lot . . . shall be . . . maintained . . . in the City if such . . . maintaining . . . shall be dangerous to life or detrimental to health." The evidence was clear and convincing that the defendant maintained his property in a condition that constituted a danger to the general public. The excavation was large and so deep that anyone falling into it might suffer serious injury. It was close enough to the sidewalk to be a hazard to passersby particularly during the hours of darkness. It was sometimes made more dangerous by residual water, a fact which would heighten its attractiveness to small children whose lack of judgment would make them the most likely to be injured. An improperly maintained excavation has, in fact, been held to be an attractive nuisance: Melford v. Gaus & Brown Const. Co., Inc., 17 Ill App2d 497, 151 NE2d 128. There was no covering, no fence, no posted warning of any kind; no steps were taken for almost three months to protect children or warn the unwary. The complaint was filed on May 27, 1964, and the violation was charged as of May 7th. Putting up a fence on June 30th was no defense to the charge. The defendant was correctly found to be liable to the City for the violation of its ordinance unless the defenses interposed by him in some way absolve him from responsibility for maintaining the condition the City complained about.

■■ The first of these defenses is that the City is precluded from interfering with the completion of the proposed building by virtue of the permit it issued. Ordinarily, the issuance of a permit purports compliance with the City's zoning ordinances and gives the permittee full authority to proceed with the execution of the approved plans. The right of a property owner to complete construction started on the basis of a building permit has been before Illinois courts on a number of occasions. Any substantial change of position, expenditure of funds or incurrence of obligation in reliance on a validly issued building permit gives the property owner a vested right to complete his construction and to use the property for the authorized purpose and estops the City from revoking the permit. People ex rel. National Bank of Austin v. Cook County, 56 Ill App2d 436, 206 NE2d 441; Deer Park Civic Ass'n v. City of Chicago, 347 Ill App 346, 106 NE2d 823. Application of this principle presupposes a legal building permit and a substantial change of position incurred in good faith reliance thereon by the property owner. Fifteen Fifty North State Bldg. Corp. v. Chicago, 15 Ill2d 408, 155 NE2d 97; 1 Yokley, Zoning Law and Practice, 2nd Ed, secs 9–5 and 9–6.

■ The permit in the present case was found, upon closer scrutiny, to have been wrongfully issued and the defendant was informed of its revocation before he had incurred any substantial expenditure, obligation or change of position. The defendant suffered little harm and he was not misled. Although the plans he submitted were supposedly checked and approved by the various divisions of the building department, including the division having to do with zoning restrictions, the plans were somewhat deceptive on their face. They indicated, erroneously, that there was a 30-foot backyard which would have met the minimum specifications for the zoning district. The defendant was experienced

■

in his field, he knew the difficulty confronting him, if not the impossibility, of planning a single family residence that would conform to the zoning requirements; he had tried and failed in his attempt to secure a variation and his haste in starting to excavate so soon after the plans were approved suggests that he knew what he was doing and that he was not, in good faith, relying entirely on the permit.

The second defense interposed to the City's quasi-criminal complaint was the invalidity of the zoning ordinance as it applied to his property. The defendant's lot is triangular in shape fronting 64½ feet on the east side of Sacramento Avenue at 5833 north. The south side of the lot, which abuts closely to a single family residence, is 78′ 2″ long. The third side is 102′ 3″ in length and extends at an angle from the northwest tip of the lot to its southeast corner. The hypotenuse of the triangle runs along an alley for its entire length. It would appear that a zoning variation would be necessary before any residential building could be erected on the lot since, due to its small area and unusual shape, it could not comply with minimum area and rear yard requirements for the zoning district in which it was located. Municipal Code of Chicago, chap 194A, secs 7.3–2, 7.5–2 and 7.7–2. The irregularity of the lot, and the limitation of its use to a single family dwelling, lends color to the defendant's position. However, it is the province of the City's Board of Zoning Appeals to grant or deny variations from zoning ordinances. Municipal Code of Chicago, chap 194A, sec 11.7–4. Zellers did not appeal the ruling of the board that was adverse to him and he did not return to the board with different plans although the board suggested that this be done; and he did not seek another variation after the permit was withdrawn and his second set of plans rejected.

■ ■ Before a landowner may call into question the validity of a zoning ordinance he must have exhausted the local administrative remedies which have been provided for him. Sinclair Pipe Line Co. v. Village of Richton Park, 19 Ill2d 370, 167 NE2d 406. The defendant did not exhaust his administrative remedies; instead, he has raised the question of invalidity as a defense and as a counterclaim. He takes refuge in the fact that the City instituted the original action and asserts that as a defendant he may challenge the validity of an ordinance when the municipality attempts to enforce it. It is quite true that if a municipality brings an action against a property owner seeking enforcement of its zoning ordinances, the property owner may raise the defense that the ordinances are invalid even though he has not yet exhausted his administrative remedies. County of Lake v. MacNeal, 24 Ill2d 253, 181 NE2d 85. In the MacNeal case the defendants questioned the validity of the applicable zoning ordinance in defending an action started against them by Lake County. The County argued that this could not be done; that before a property owner, either as a plaintiff or as a defendant, could challenge the validity of a zoning ordinance as it applies to his property he must first have made an effort to obtain relief from the operation of the ordinance through administrative procedures and that by having failed to do this the defense could not be considered. The court answered this argument by stating that there were substantial differences between a property owner who is the moving party in an action to declare an ordinance invalid and one who is summoned into court and charged with illegally violating the ordinance, and that:

"So long as local authorities institute an action, a defendant should be entitled to defend on the

ground of the invalidity of the ordinance and to have the issue determined. If it were otherwise, the result could be that judicial machinery would be used to enforce an ordinance that is unconstitutional."

■ The MacNeal case differs materially from the present one. In MacNeal the County's complaint was that the defendants were violating a zoning ordinance. In this case the City's complaint was that the defendant was maintaining a dangerous excavation. The alleged violation was not one against a zoning ordinance but against a health and sanitation ordinance. The defense that certain zoning ordinances were invalid was not germane to the charge brought against the defendant. The main point of the defendant's counterclaim also pertained to the zoning regulations. He initiated this action as a plaintiff. In neither instance, either as the first complainant or as a counter-defendant, did the City call its zoning ordinances into question. The defendant did so twice, once as a defendant in a nonrelevant action and once as a counter-plaintiff, and he did both without having exhausted the available administrative remedies. He did not attempt to obtain a variation from the Zoning Board of Appeals which his irregularly shaped lot might have entitled him to if he had suitable plans. He sat back until the present case was commenced and then used this case as a vehicle to attack the validity of the zoning ordinances. This he cannot do.

The penalty assessed against the defendant is affirmed. The several orders entered against the City are reversed.

Affirmed in part and reversed in part.

SULLIVAN and SCHWARTZ, JJ., concur.