**Emil Johnson, Plaintiff-Appellee, v. City of Chicago, a Municipal Corporation, Defendant-Appellant.**

Gen. No. 51,179.

First District.

March 14, 1969.

Raymond F. Simon, Corporation Counsel of City of Chicago, of Chicago (Sydney R. Drebin and Marsile J. Hughes, Assistant Corporation Counsel, of counsel), for appellant.

Maurice J. Nathanson, of Chicago (Paul Peter Black, of counsel), for appellee.

EBERSPACHER, J.

This is an action for declaratory judgment wherein the plaintiff, Emil Johnson, sought to have declared invalid certain portions of the Chicago Zoning Ordinance as comprehensively amended May 29, 1957, to the effect that the ordinance prevents the use of lots providing 3,306 square feet of lot area for the erection of a single family dwelling under the R2 zoning and to have declared the plaintiff's right to build a family dwelling pursuant to a permit previously issued to him by the City of Chicago.

In 1954 the plaintiff and his wife acquired the following described property in joint tenancy:

> Lot 5 in Block 1 in Murdock James and Company's Milwaukee Avenue Addition; a Subdivision of Lot 4 and part of the Northeast Quarter and part of the Northwest Quarter of Fractional Section 5, Township 40 North, Range 13, East of the Third Principal Meridian in Cook County, Illinois.

183

Lot 5 is a lot of record in said Block 1 in said subdivision. The block in which it is located is a triangular block bounded on the northeast by Indian Road, on the southeast by Miami Avenue and on the west side by Mason Avenue. Attached hereto is an appendix showing the blocks and lots therein. All lots numbered 1 through 14, being all the lots in Block 1 are lots of record. Lot 5 is a through lot, the southern portion fronting on Miami Avenue and the north portion on Indian Road. Its west side abuts the alley east of Mason Avenue and its east side abuts Lot 4. Lot 5 of record contains a total area of about 6,700 square feet. It is improved with a single-family residence and garage facing Miami Avenue. At the time of acquisition plaintiff was delivered a plat of survey of Lot 5 purporting to show that it had been divided into two parcels, by the drawing of a line at right angles to the west line of the lot at a point 120 feet (erroneously shown as 210 feet) North of the Southwest corner of the lot. The line extends 30 feet across the lot from an iron pipe on the west line to an iron pipe on the east line. The North parcel, 119.23 feet north and south adjoining the alley was designated as Parcel B, and the South parcel was designated as Parcel A. Neither are lots of record. Parcel B contains approximately 3,306 square feet while Parcel A contains approximately 3,442 square feet. The residence of plaintiff is located on Parcel A and Parcel B previous to 1962 contained trees and shrubbery and was used as a garden for the residence on Parcel A.

The parties stipulated that all lots in the same block abutting Mason Avenue are improved and all are lots of record providing 3,750 square feet and that the corner lots are larger than 5,000 square feet (at Miami and Indian Road intersections with Mason Avenue). The parties further stipulated that Lot 1 of Block 1, at the corner of Indian Road and Miami Avenue, now contains two single-family residences on portions of Lot 1 which are not lots of record. Both of the portions of Lot 1 on

which these buildings are built are less than 5,000 square feet, but over 3,750 square feet in area. Lots 3 and 4 have been divided by metes and bounds into portions or parcels which are not lots of record. On the south portion of Lots 3 and 4, fronting on Miami Avenue, there is a single-family residence and garage. The lot area is 4,486 square feet. In 1958, John J. Jung bought the northern portions of Lots 3 and 4 fronting on Indian Road. Mr. Jung erected his single-family residence on this parcel which provides a lot area of 6,450 square feet.

The section of the Chicago Zoning Ordinance applicable to the present case provides as follows:

> "7.5-2 Minimum Lot Area—R2 Single-Family Residence District
>
> "In an R2 District, there shall be provided not less than 5,000 square feet of lot area per dwelling unit, except that in cases where the predominant number of lots of record on the effective date of this comprehensive amendment, fronting on the same side of the street between the two nearest intersecting streets, have a lot area less than that prescribed by the regulation of this district, then, and in that event, the lot area requirement shall be that of existing lot areas in the area previously described, but in no event shall the lot area requirement be less than 3,750 square feet." (Municipal Code of Chicago, c 194A, § 7.5-2, as amended.)

All uses in Block 1 in which Lot 5 is located, are single-family residence uses in compliance with the zoning designated as R2.

In 1961 plaintiff had a survey made of Tract B which showed the same dimensions as the survey delivered to him on acquisition, but corrected the earlier survey to show that the pipe in the west line of Lot 5 was 120 instead of 210 feet north of the Southwest corner of the Lot. Plaintiff then decided to erect a residence on Tract

185

B and requested various building contractors to submit bids for varied work on the contemplated single-family residence over one story in height, and in 1962 applied to a city for a building permit.

On June 6, 1962, the plaintiff obtained the building permit and immediately began preparations for construction. The plaintiff removed the trees and shrubbery which had been growing on Parcel B and began the excavation of the Parcel and the installation of the footings. On June 14, 1962, the City notified the plaintiff to stop work in that the permit, issued on June 6, 1962, had been revoked because the land described in the application and permit did not conform to the requirements for minimum lot area as prescribed in the zoning ordinance. On March 4, 1963, the plaintiff filed this suit for declaratory judgment.

A City Planner employed by the City of Chicago testified that from his familiarity with the subject and surrounding property, his expert opinion was that from a City Planning and Zoning point of view, the highest and best use of the subject property is to remain a portion of Lot 5 of record upon which the existing single-family residence now exists. In arriving at his opinion, the City Planner concluded that if Lot 5 of record were divided, it would establish the subject property (Parcel B) as nonconforming to the ordinance, and would also make nonconforming the portion of Lot 5 upon which the plaintiff's residence is erected. (Parcel A.) The City Planner further testified that plaintiff's success in dividing Lot 5 into substandard lots would establish a legal precedent to permit other owners to erect houses in violation of the zoning ordinance on substandard lots. In his opinion the proposed use of subject property would adversely affect the surrounding communities of Norwood and Edison Parks.

A real estate appraiser for the City testified that he examined the subject and surrounding properties. He offered his expert opinion that all of the homes in the triangle block would be adversely affected by the plaintiff's proposed use.

John Jung testified that he is the owner of the property abutting the plaintiff's property to the east. In 1958, he built a single-family residence at 6144 N. Indian Road and has lived there since. When he bought his property, the subject property to the west (Parcel B) was a vacant piece of ground containing shrubbery and trees. He testified that he bought his land right after the 1957 Comprehensive Zoning Ordinance went into effect and that he checked the zoning ordinance to make certain that no legal building could be built on the lot to his west and was informed that nothing, under the zoning law could be built on the land west of his.

Upon the filing of the complaint the Court referred the cause to a Master In Chancery to take evidence and to report his findings of facts, conclusions of law and recommendations to the Court. Upon the filing of the Master's report from which the foregoing facts were determined and the objections thereto by the City of Chicago, which stood as exceptions, and having heard oral arguments of the parties, the Court overruled the exceptions and entered judgment affirming the Master's report in all respects and in particular, that the R2 single-family residence district classification of the Chicago Zoning Ordinance was void in that it purported to deny the plaintiff the right to build a family residence on a lot providing only 3,306 square feet in area; that the plaintiff had a clear legal right to proceed with the construction of such family residence for which the City of Chicago building permit had theretofore been issued; and that the City employees were enjoined from prevent-

ing the completion of the said residence provided that the plaintiff complied with all applicable provisions of the Chicago Building Code in force when the permit was issued.

In its effort to reverse the judgment the defendant, City of Chicago, contends that the plaintiff acquired no rights under the building permit issued in violation of the City's ordinances, and that the City properly revoked the permit; that the presumption of the validity in favor of the Chicago Zoning Ordinance has not been overcome by clear and convincing evidence on the part of the plaintiff that the ordinance is arbitrary and invalid; and that the plaintiff's proposed use of the subject property fails to comply with the ordinance.

As to the first argument of the defendant, City of Chicago, i. e., that the plaintiff acquired no rights under the building permit issued in violation of the City's ordinances and that the City properly revoked the permit, the defendant argues that the building permit upon which the plaintiff relies was issued by a City employee acting beyond the scope of his authority and that accordingly the permit was void and conveyed no rights to the plaintiff.

In City of Chicago v. Zellers, 64 Ill App2d 24, 212 NE2d 737, the Court, in sustaining the City's right to revoke a building permit issued in violation of a zoning ordinance, said:

> "The first of these defenses is that the City is precluded from interfering with the completion of the proposed building by virtue of the permit it issued. Ordinarily, the issuance of a permit purports compliance with the City's zoning ordinances and gives the permittee full authority to proceed with the execution of the approved plans. The right of the property owner to complete construction started on

the basis of a building permit has been before the Illinois courts on a number of occasions. Any substantial change of position, expenditure of funds or incurrence of obligation in reliance on a validly issued building permit gives the property owner a vested right to complete his construction and to use the property for the authorized purpose and estops the City from revoking the permit. People ex rel. Nat. Bank of Austin v. Cook County, 56 Ill App 2d 436, 206 NE2d 441; Deer Park Civic Ass'n v. City of Chicago, 347 Ill App 346, 106 NE2d 823. Application of this principle presupposes a legal building permit and a substantial change of position incurred in good faith reliance thereon by the property owner. Fifteen Fifty North State Bldg. Corp. v. Chicago, 15 Ill2d 408, 155 NE2d 97; 1 Yokely, Zoning Law and Practice, 2d Ed, §§ 9–5 and 9–6.

"The permit in the present case was found, upon closer scrutiny, to have been wrongfully issued, and the defendant was informed of its revocation before he had incurred any substantial expenditure, obligation or change of position. The defendant suffered little harm and he was not misled."

The plaintiff here argues that he made substantial expenditures and incurred obligations in reliance upon the permit issued by the City. However, although the plaintiff immediately commenced building preparations upon receipt of the permit, the City of Chicago acted diligently in its effort to revoke the permit and served notice on the plaintiff of its revocation 8 days after its issuance. During this interim period the plaintiff expended approximately $1,600, which included the permit fee, excavation, removal of trees and shrubs, and concrete work for a portion of the footings.

■ The plaintiff's evidence that he had incurred contract liability in the amount of $19,354 is not persuasive. He proved payment and work in progress in an amount of less than $1,700 and that in the seven days following the erroneous issue of the building permit. The remainder of his alleged contractual liability he claims was incurred by bids submitted before the permit was erroneously issued. Some of these show his signature of acceptance but there is a lack of evidence that the bidders had been advised of acceptance. There is evidence that plaintiff had premeditated the erection of the house on the 3,306 square feet parcel in violation of the ordinance before the issuance of the permit, when he should have known that no other residence in the block was on a parcel of less than 3,750 square feet. He was not deprived of any opportunity to determine what zoning ordinance might be applicable; nor was he induced by the City to incur any liabilities. He relied upon an invalid permit, issued in contravention of the ordinance. He was not induced to assume obligations by deceit, fraud or misrepresentation of the City or it officers. He must be charged with notice of the want of authority to issue the permit. See J. Burton Co. v. City of Chicago, 236 Ill 383, 86 NE 93, where at page 391 the Court said with respect to contracts:

> "This action of appellee was, however, taken on its own responsibility, relying on an invalid permit issued at its own instance without any authority, and was not induced by any action of the City or any of its officers, or even, so far as appears, with their knowledge."

In such a situation no estoppel in pais permits the plaintiff to continue his illegal construction.

■ We pass next to the defendant's allegation that the presumption of the validity in favor of the Chicago

190

Zoning Ordinance has not been overcome by clear and convincing evidence on the part of the plaintiff that the ordinance is arbitrary and invalid. It is clear that a zoning ordinance is presumed to be valid and that the burden is upon the party who attacks the validity to establish by clear and affirmative evidence that it is arbitrary. Martin v. City of Rockford, 27 Ill2d 373, 189 NE2d 280. It is likewise clear that minimum lot area requirements of single-family residence zoning is a valid zoning classification. Reitman v. Village of River Forest, 9 Ill2d 448, 453, 137 NE2d 801; Honeck v. County of Cook, 12 Ill2d 257, 260, 146 NE2d 35; and Galpin v. Village of River Forest, 26 Ill2d 515, 520, 187 NE2d 233.

In the present case the plaintiff owned a lot of record containing 6,700 square feet located in an R2 single-family residence zoning district. The plaintiff, upon obtaining the illegal building permit, sought to erect a second principal building upon the northern 3,306 square feet (Parcel B) of his lot. The erection of a second principal building on the Parcel B of the lot would render the southern portion, Parcel A of the lot, an illegal use by depriving it of the minimum lot area. Accordingly, if the plaintiff were allowed to proceed in the erection of the second principal building, not one but two nonconforming uses would be established in the block.

There are presently 15 homes erected within the triangular block. Fourteen of the homes existed prior to the amendatory ordinance and one home, the Jung home, has been erected since that time. Of the 15 homes erected within the block, 3 are on lot areas exceeding 5,000 square feet and the remaining 12 are on lot areas of at least 3,750 square feet.

From the evidence it appears that Record Lots 1, 3, 4, 5, 6 and 14 exceed 5,000 square feet in area and that record lots 2, 7, 8, 9, 10, 11, 12, 13 contain less than 5,000 square feet, but at least 3,750 square feet. In other

191

words, all the record lots contain the minimum requirement of 3,750 square feet and six of the fourteen contain in excess of 5,000 square feet. It is further clear from the evidence that there is no existing residence within the triangular block on less than 3,750 square feet. On the effective date of the amendatory ordinance the predominant number of lots of record fronting on Indian Road on the South side of the street, between Mason and the intersection of Indian Road and Miami, contained 5,000 square feet, Lot 2 being the only record lot that fronted on Indian Road, between Miami and Mason that did not. Even with these fractionated no residence was on a fractionated lot of less than 3,750 square feet.

Regardless of how the minimum area section of the Zoning Ordinance is interpreted, it is clear that the legislative intent was to establish a minimum lot area requirement of 3,750 square feet per dwelling unit. This legislative intent is not altered merely because of the fact that the particular block in question of which the subject property is a part is an irregular shaped block with lots facing on two streets. Likewise it is clear that to allow the plaintiff to erect a structure he proposes would allow the plaintiff to erect a dwelling unit on a lot far smaller than the minimum lot requirement as prescribed by the ordinance. To hold otherwise would jeopardize the Zoning Ordinance as it applies to all irregular shaped blocks. Likewise to hold otherwise would be to the detriment of those who complied with the original ordinance and those who relied upon its validity and erected structure after the 1957 amendment.

We find no evidence as argued by the plaintiff to indicate that the Zoning Ordinance as applied to the plaintiff is arbitrary and unreasonable. The plaintiff's reliance on Pringle v. City of Chicago, 404 Ill 473, 89 NE2d 365, which held that a zoning restriction was

invalid because the major portion of homes on the same block did not meet the ordinance is not applicable to the present case. In the Pringle case the Court found that the subject property was surrounded and characterized by property used for purposes other than the zoning restrictions sought to be applied.

■ ■   It is our opinion that the ordinance as applied to the particular property and under the special facts of this case is not arbitrary and unreasonable, but in fact, is a valid enactment to control the density of dwelling units and in this regard is directly related to the public health, safety, morals and welfare. It is further our opinion that the plaintiff's proposed use of the subject property fails to comply with the ordinance and its legislative intent.

The decree of the Circuit Court of Cook County is therefore reversed and the cause remanded for the entry of a decree in accordance with the views herein expressed.

Reversed and remanded with directions.

GOLDENHERSH and MORAN, JJ., concur.

APPENDIX TO OPINION IN EMIL JOHNSON, PLAINTIFF-APPELLEE,
VS. CITY OF CHICAGO, A MUNICIPAL CORPORATION — NO. 51179

194