THE CITY OF CHICAGO, Plaintiff-Appellant, *v.* EXCHANGE NATIONAL BANK, as Trustee, *et al.*, Defendants-Appellees.

(No. 54072; )

First District—June 21, 1971.

Richard L. Curry, Corporation Counsel, of Chicago, (Marvin E. Aspen and Daniel Pascale, Assistant Corporation Counsel, of counsel,) for appellant.

Jules Q. Kaiser, of Chicago, (Ellis B. Rosenzweig, of counsel,) for appellees.

Mr. PRESIDING JUSTICE BURKE delivered the opinion of the court:

This action was brought by the City of Chicago for an injunction requiring, *inter alia*, the owners of the subject property to conform the building on the property to the requirements of the Zoning Ordinance of the City of Chicago. The court in the decree fined the former owner of the subject property who had constructed the building, because of his departure from the building permit issued by the City for the construction of the building. The decree also dismissed the complaint as against the present owners of the subject property (hereinafter referred to as the

defendants) and enjoined the City from interfering with the present use of the property. This appeal is taken by the City from the latter part of the decree, dismissing the complaint as to the present owners and enjoining the City from interfering with the use presently made of the property. No appeal is taken from that part of the decree fining the builder-former owner.

The subject property is located at 114 West Touhy Avenue in Chicago and is presently improved with a three-story, twenty-one unit apartment building. On December 9, 1960, the City issued a building permit to the then-owner of the property, defendant Sam Toporek, for the erection of an apartment building consisting of nine efficiency apartments, six one-bedroom apartments and six two-bedroom apartments. Construction of the building commenced and the City's Department of Buildings made periodic inspections of the construction on six occasions during the first half of 1961, with the final inspection occurring on August 31, 1961.

On February 4, 1963, defendant Bernard Rich entered into a contract with Toporek for the purchase of the subject property for the sum of $250,000. In the contract the sellers warranted that "there are no building violations to our knowledge existing on the premises." Title was thereafter conveyed to defendant Rich and others, who subsequently conveyed title to the defendant Trustee under a land trust.

On June 13, 1963, a building inspector from the City's Department of Buildings made an inspection of the building and discovered that instead of the six two-bedroom, six one-bedroom and nine efficiency apartments originally called for by the City's building permit, the building contained six two-bedroom apartments and fifteen one-bedroom apartments. This action was subsequently brought to require deconversion of the building to conform to the permit as issued by the City.

At the trial, City of Chicago Building Inspector Charles Manshrek testified for the City that he inspected the building in June, 1963, and found the violations in question. He testified that he could not tell when the deviation from the specifications of the permit occurred, whether during the original construction or thereafter, without having to tear out plaster and flooring. He stated that the building as it then existed violated the City's Zoning Ordinance in that the real estate contained 2600 square feet less than that required by the ordinance, as well as a number of automobile parking spaces less than required. The witness testified that the City's original permit of construction, or a microfilm thereof if the original had been destroyed according to Building Department policy and procedure, would be available to anyone desiring to inspect such document, and that such document would show the nature of the construction initially applied for and granted.

John McNamara, a real estate broker and appraiser, was called as a witness for the City and testified that after an inspection of the building he was of the opinion that the property was worth $225,000 as presently improved, but that it would be worth $190,000 if improved as required under the original permit.

For the defense Bernard Rich testified that he visited the building site six or seven times during the month of January 1961 and that he found "twenty-one bedroom" apartments. When he purchased the property two years later there were also twenty-one bedroom apartments, and it did not appear that the walls had been newly constructed or tampered with. He stated that he did not know whether the building permit had been inspected prior to his purchase of the property, but that if his attorneys had shown the permit to him he did not notice that it called for the construction of twelve bedroom apartments and nine efficiency apartments.

The court entered a decree fining defendant Toporek in the amount of $2500 for his departure from the requirements of the original permit issued by the City. The court further found that the other defendants were innocent of "any wrongdoing and were not parties to any deception" and dismissed the complaint as to them; the decree also enjoined the City from interfering with the present use of the premises as a twenty-one bedroom apartment building. The decree found that the City had failed to prove that the public welfare required a deconversion of the building to conform to the terms of the original permit issued by the City.

The decree was entered July 2, 1968, and within 30 days thereof the City filed with the Clerk of the Circuit Court a "Motion to Vacate Decree." It appears that no notice of the motion to vacate was served upon the defendants. On December 10, 1968, defendants filed a motion to expunge the motion to vacate from the Court record. Both the motion to vacate and the motion to expunge the motion to vacate were denied, and on January 23, 1969, within 30 days of the denial of the motion to vacate, the City filed its notice of appeal to this Court.

Defendants subsequently filed in this Court, two motions to dismiss the appeal on the grounds that the City's motion to vacate the decree was not a "proper motion" which could stay the running of the time for filing a notice of appeal from the decree (since no notice of the filing of the motion to vacate was served upon defendants and since the motion to vacate was not called up for hearing by the City for over four months after its filing) and that consequently the City's notice of appeal was filed too late. This Court denied defendants' motions to dismiss the appeal on June 12, 1969 and on September 11, 1969, respectively.

Defendants again raise the question of the alleged late notice of appeal

in their brief on this appeal, contending again that the motion to vacate the decree filed by the City did not qualify as a "proper motion" under Section 68.3 of the Civil Practice Act and that therefore the City's notice of appeal was not filed within the time prescribed in Supreme Court Rule 303. See Ill. Rev. Stat. 1969, ch. 110, par. 68.3; ch. 110A, par. 303.

■■■ Neither the Civil Practice Act nor the Supreme Court Rules contain a provision affecting the validity of a motion otherwise proper in form and seasonably filed, for failure of the party filing the motion to serve a copy thereof upon opposing parties. On the contrary, Supreme Court Rule 104(d) specifically provides that the failure to deliver or to serve a copy of a motion, filed with the Clerk of the Circuit Court, upon an opposition party does not "in any way impair the jurisdiction of the court over the person of any party, but the aggrieved party may obtain a copy from the clerk * * *" at the financial expense of the party filing the motion. Further, as to the fact that the City's motion to vacate was not called for hearing until over four months after its filing, Supreme Court Rule 184 provides that either party may call up a motion for disposition either before or after the expiration of the time provided for filing. Failure on the part of the City to serve notice or to call the motion up for a hearing in no way impaired the validity of the motion. The motion was seasonably filed and the time for filing the notice of appeal from the decree consequently did not commence to run until after the court ruled upon the motion. (Ill. Rev. Stat. 1969, ch. 110, par. 68.3(2).) We adhere to the rulings on defendants' prior motions to dismiss made by this Court.

■■ The circumstances of this case do not support the court's finding that the City of Chicago is estopped from enforcing its Zoning Ordinance against the defendants. In order to establish an estoppel against a municipality it must be shown that there was actual inducement by a government official which caused the aggrieved party to act to his substantial detriment. There must be something more than an "unauthorized act" of a ministerial official. *People ex rel. American National Bank v. Smith,* 110 Ill.App.2d 354, 366.

In the case of *G & S Mortgage & Investment Corp. v. City of Evanston,* 130 Ill.App.2d 369, 264 N.E.2d 740, the plaintiff sued to enjoin the City of Evanston from enforcing its quasi-criminal ordinance against the plaintiff for the violation of the city's zoning ordinance. In 1925 a building permit was issued by the city for the construction of a ten unit apartment building, whereas a thirteen unit building was actually constructed. Plaintiff purchased the building in 1967, and it appears that several months prior to the purchase of the property plaintiff had received a letter from a city official stating that there were no violations of the

city's zoning ordinance on the property other than a minor plumbing violation. Plaintiff apparently purchased the building without inquiring of the city concerning "any and all violations regarding the building." It further appears from the facts set out in the opinion that over the years some 17 inspections of the building were made by the city and that the violation in question had continued over a period of 43 years. The Court there held that such circumstances were not sufficient to raise an estoppel against the city from enforcing its zoning ordinance, the Court stating that plaintiff's predicament was not the fault of the city.

Likewise in the instant case, the evidence shows no act on the part of the City of Chicago which could in any manner be interpreted as constituting an inducement to the defendants to purchase the subject property. Although a certificate of occupancy had been issued for the building by the City upon completion of the building, it does not appear that the defendants made any effort to acquaint themselves with the zoning status of the property prior to its purchase. The building permit, or its microfilm copy, was on file in the City's Building Department and that document could have been inspected by the defendants or their agents: that document showed that the construction permit was issued for a building consisting of nine efficiency apartments and twelve bedroom apartments. The fact that defendant Toporek warranted that there were no ordinance violations on the property cannot be said to have bound the City in any manner; Toporek's act or affirmation cannot be construed to be that of the City. It is apparent that the defendants' predicament is the result of their own inaction rather than the result of affirmative action on the part of the City.

The cases cited by the defendants in support of their position are not in point. In *Cities Service Oil Company v. City of Des Plaines*, 21 Ill.2d 157, the city issued a permit to the plaintiff for the construction of a gasoline filling station on property within an area on which such structure was prohibited by the city's zoning ordinance. Plaintiff expended considerable funds in initiating the construction before the city revoked the permit and ordered plaintiff to cease construction. It appears that plaintiff attempted, without success, to secure a copy of the city's zoning ordinance, and plaintiff proceeded pursuant to the permit originally issued without knowledge that the construction was in violation of the ordinance.

In *Cos Corporation v. City of Evanston*, 27 Ill.2d 570, the plaintiff expended considerable funds on consultations with city officials, architects, and the like, in planning the construction of a building. The building was planned according to the city's zoning existing at the time. Prior to the construction of the building the city amended its zoning

ordinance which would have resulted in a violation by the proposed building of the amended ordinance, and the city attempted to stop the construction. The Court ruled that under the circumstances the city was estopped from enforcing its amended ordinance against plaintiff.

In *City of Evanston v. Robbins*, 117 Ill.App.2d 278, the city was estopped from enforcing its zoning ordinance against defendant's illegal structure in light of the fact that the city, in the past, had ordered the defendant to make changes in the structure consistent with a legal nonconforming use and that the defendant had spent funds in doing so.

The case of *Westfield v. City of Chicago*, 26 Ill.2d 526, did not involve affirmative acts on the part of the city or the question of estoppel; rather, *Westfield* was decided on its peculiar facts and in light of the prevailing socio-economic conditions of the area where the building was located.

■■ Defendants also contend that the injury caused by the nonconformity of their building to the Zoning Ordinance is minimal compared to the loss in value of the property which will be suffered by them if they are forced to deconvert the premises to conform to the original permit. The City should not be made to suffer the burden of a non-conforming use where it has done nothing to encourage such situation and where the defendants apparently took no steps to protect themselves before concluding their transaction. Defendants recourse, if any, is against their grantor and not against the City.

For these reasons the part of the decree entering judgment in favor of the plaintiff and against Sam Toporek is affirmed, and the part of the decree dismissing the complaint as to the remaining defendants and enjoining the City from interfering with the appellees in the present use of the property is reversed and the cause is remanded with directions to dismiss the counter claim and to enter a decree finding the issues and granting relief in favor of the City of Chicago and against the defendants in accordance with the prayer of the complaint.

Decree affirmed in part and reversed in part and cause remanded with directions.

LYONS and GOLDBERG, JJ., concur.