(No. 44600.—

THE CITY OF CHICAGO, Appellee, v. EXCHANGE NATIONAL BANK *et al.,* Appellants.

*Opinion filed May 22, 1972.*

JULES Q. KAISER, of Chicago (ELLIS B. ROSEN-ZWEIG, of counsel), for appellants.

RICHARD L. CURRY, Corporation Counsel, of Chicago (WILLIAM R. QUINLAN and DANIEL PASCALE, Assistants Corporation Counsel, of counsel), for appellee.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, City of Chicago, filed this action in the circuit court of Cook County for the issuance of a mandatory injunction directing the defendants to make alterations in an apartment building situated at 1714 West Touhy Avenue, which alterations were allegedly necessary to place it in compliance with applicable zoning ordinances. Defendant Taporek was the builder and former owner of the building and the other defendants are the present owners. Taporek did not appear or plead and the other defendants answered and counterclaimed. The trial court found that Taporek, when erecting the building, had "departed from the plan upon which the [building] permit was issued" and entered judgment in favor of the city and against Taporek in the amount of $2500 "to reimburse the City of Chicago for all costs and damages incurred by reason of said departure from the plans ***." As to the other defendants, the circuit court dismissed the complaint and ordered that the plaintiff "be *** enjoined and estopped from interfering with the present owners maintaining the subject premises with 21 bedroom apartments and 12 off-street parking spaces, provided that all other reasonable and valid ordinances of the city pertaining thereto are observed." The plaintiff appealed and the appellate court reversed the decree *(City of Chicago v. Exchange National Bank (Ill.App. 1971), 273 N.E.2d 484)* and remanded the cause with directions to enter a decree in accordance with the prayer of the complaint. We

allowed the present owners' petition for leave to appeal.

The record shows that on December 9, 1960, the city issued a building permit to defendant Taporek for the construction of a 3-story, brick, 12-bedroom apartment and 9-efficiency-unit building at 1714 West Touhy Avenue. On August 16, 1961, an occupancy certificate was issued for 9 efficiency and 12 bedroom apartments.

The plans submitted by Taporek with the application for the building permit show a 125-square-foot area labeled "dining alcove" in each of the 9 efficiency units. In the zoning ordinance an efficiency unit is defined as "a dwelling unit consisting of one room exclusive of bathroom, kitchen, hallway, closets, or dining alcove directly off the principal room, providing such dining alcove does not exceed 125 square feet in area." Apparently the 9 efficiency units were converted into one-bedroom apartments by constructing a doorway between the living room and the dining alcove. Expert appraisal testimony showed that the building in its present condition was worth $225,000 and that if the 9 bedroom apartments must be reconverted to efficiency units its value would be decreased to $190,000. With the building containing 21 bedroom apartments, the area of the lot upon which it stands is 2600 square feet less than the minimum and there are three fewer parking spaces provided than are required under the zoning ordinances.

On February 4, 1963, Taporek entered into a contract with defendant Bernard Rich to sell the apartment building for $250,000. A deed was delivered to Rich on February 18, 1963, and title is now held by Exchange National Bank as trustee for him, his brothers, Norman and Phillip, and their wives. Rich testified that the building contained 21 bedroom apartments when he purchased it. On June 13, 1963, a city building inspector found that the building contained 21 bedroom apartments and no efficiency units.

Defendants contend that the city should be estopped

from enforcing the zoning ordinance for the reasons that:
(1) there would be no substantial gain resulting to the
general public as opposed to the hardship imposed on
them; (2) they purchased the property in good faith; and
(3) the affirmative acts of the city led them to believe that
the building complied with the zoning ordinance.

In its decree, as the basis of its ruling, the trial court
made the following finding: "9. The court further finds in
the present case that no proof has been offered by the
plaintiff to indicate that the public welfare requires a
deconversion of the subject premises to 9 efficiency
apartments and 12 bedroom apartments as called for under
the original permit. The evidence indicates that the zoning
ordinance in its application to the particular property,
would impose a real and substantial hardship on the
present owners by subjecting them to the cost of recon-
struction, which would lessen the intrinsic value of the
building with no substantial gain resulting to the general
public."

The trial court's finding that compliance with the
ordinance would require the owner-defendants to expend
the cost of converting 9 of the units and would reduce the
market value of the property is supported by the evidence,
but it was not the plaintiff's burden to prove that the
public welfare required enforcement of the ordinance. It
was the defendants' burden to overcome the presumption
that enforcement was of benefit to the health, safety and
welfare of the public. *Eggert v. Board of Appeals, 29 Ill.2d
591; People ex rel. Chicago Title and Trust Co. v. Village
of Elmwood Park, 27 Ill.2d 177; Fifteen Fifty State St.
Bldg. Corp. v. City of Chicago, 15 Ill.2d 408.*

The defendants offered no evidence which would tend
to support their contention that affirmative acts on the
part of the city led them to believe that the building was in
compliance with the zoning ordinance. They argue that the
issuance of the building permit, the inspection of the work
during construction and the issuance of a certificate of

occupancy were affirmative acts giving rise to an estoppel. Implicit in this argument, and inferred throughout their brief, is the assumption that despite the fact that the building permit was issued, the inspections conducted, and the certificate of occupancy issued for construction of a 12-bedroom and 9-efficiency-unit building, the building, with knowledge on the part of the city, was actually constructed to contain 21 bedroom apartments. There is no evidence in the record to support the assumption that there was such knowledge on the part of the city.

Defendant Bernard Rich testified that in January 1961, he visited the premises on 6 or 7 occasions and that the building then contained 21 bedroom apartments. The inspection records show that an inspector visited the site on December 22, 1960, and noted on the permit that construction had "not started"; that on March 10, 1961, the plumbing was inspected; and that the roof and partitions were inspected on April 17, 1961. A final inspection was made on August 9, 1961, and on August 16, 1961, the certificate of occupancy was issued, at which time, so far as the record reflects, the building was in compliance with the building permit. This documentary evidence is not disputed and supports the appellate court's holding that the city had done nothing out of which an estoppel could arise.

We note that the appellate court affirmed the judgment imposing the fine on defendant Taporek. Since neither party appealed from that portion of the decree, the affirmance is without significance. Also in its opinion the appellate court ordered that upon remandment the counterclaim be dismissed. The counterclaim was dismissed voluntarily, without prejudice, and under the circumstances there was no issue presented for adjudication by the appellate court or this court.

The judgment of the appellate court remanding the cause for the entry of a decree granting the plaintiff the relief prayed in its complaint is affirmed.

*Judgment affirmed.*