MICHAEL O'LAUGHLIN, Plaintiff-Appellee, v. THE CITY OF CHICAGO et al., Defendants-Appellants.

(No. 59493;

First District (2nd Division)—May 6, 1975.

*Rehearing denied June 4, 1975.*

Richard L. Curry, Corporation Counsel, of Chicago (Daniel Pascale, and Edmund Hatfield, Assistant Corporation Counsel, of counsel), for appellants.

Michael J. McArdle, of Chicago, for appellee.

Mr. PRESIDING JUSTICE DOWNING delivered the opinion of the court:

Plaintiff, Michael O'Laughlin, purchased (in April, 1973) a 50 x 154[1] parcel of land in the City of Chicago, located in the R-3 general residence district under the city zoning ordinance. At the time of purchase the lot had only one dwelling and garage which plaintiff razed in order to construct two two-story brick duplexes. The defendants, City of Chicago by its building commissioner, issued two building permits for this construction, but revoked them 11 days later after discovering the lots did not meet the minimum lot size requirements set out in the Chicago Zoning Ordinance.[2] Plaintiff sought and obtained an injunction in the chancery division of the circuit court of Cook County to enjoin and restrain the defendants from withholding and revoking the building permits, to restore said permits, and authorize the plaintiff to commence construction immediately. Defendants' attempt to stay the order in the trial court was denied. This court also denied a motion to stay the order, but without prejudice to the rights of the defendants upon determination of this appeal.

Plaintiff has filed no brief in this court. Defendants thereupon filed a motion requesting this court to reverse the judgment of the circuit court on the merits notwithstanding the failure of plaintiff to file a brief. There is an abundance of authority, for which citation is unnecessary, to author-

---

[1] The subject property is variously described in different parts of the record as 50 x 154, 50 x 156, and 50 x 160.

[2] Municipal Code of Chicago, Illinois 1973, ch. 194A, par. 7.5—3.

ize this court to summarily reverse for the failure of plaintiff to comply with Supreme Court Rule 341 (Ill. Rev. Stat. 1973, ch. 110A, par. 341) in the filing of the appellee's brief. However, in view of the issues raised by the judgment of the trial court, we deem it essential to review the matter on its merits. Pursuant to Supreme Court Rule 345 (Ill. Rev. Stat. 1973, ch. 110A, par. 345), the Edison Park Community Council filed an amicus curiae brief.

Plaintiff has filed[3] a motion to dismiss this appeal for mootness since the property no longer belongs to Michael O'Laughlin. In said motion to dismiss, by affidavit of plaintiff's attorney, it was alleged that plaintiff sold one parcel, lot 28, on December 1, 1973, and the other parcel, lot 27, was sold on May 3, 1974.

The issues raised by defendant's appeal are: (1) whether the issuance of building permits for two two-story duplex residences on two adjacent 25-foot lots of record, which previously housed a single residential building and garage, violated the minimum lot area requirements of the Chicago Zoning Ordinance; (2) whether the City of Chicago is estopped from revoking the permits if they were erroneously issued; and (3) whether the plaintiff's action properly seeks equitable relief or is the relief required in the nature of mandamus.

The pertinent facts follow. About April 12, 1973,[4] plaintiff purchased real property (tract) made up of two lots of record located at 6753-55 Oshkosh Street. The tract contained one two-story dwelling and a garage. These buildings were entirely located on lot 27, while lot 28 appeared to be a yard area for the residence. The tract, at the date of purchase and at all times since then, has been zoned R-3 general residence.[5] The sales contract for this tract originally described the tract as one lot, 50 x 160; however, it was altered at plaintiff's request to show two 25-foot lots of record. This alteration was initialed by plaintiff and seller. Both lots were conveyed in a single deed.

On April 9, 1973, a wrecking permit was issued to the plaintiff for the destruction of the frame house situated on lot 27. The house was razed; and on April 19, 1973, two building permits were issued, each

---

[3] Plaintiff's motion to dismiss was filed in this court February 20, 1975, only 5 days before oral argument and some 22 days after the notice of oral argument before this court was announced.

[4] On direct examination Mr. O'Laughlin testified he purchased the building on April 12, 1972. His subsequent testimony and exhibits indicate that the property was purchased on April 12, 1973.

[5] The record reveals that on December 29, 1972, one Anthony Fallegiordo filed an application to amend the zoning for the tract from R-3 to R-4 general residence district, which application was denied by the city council on March 22, 1973.

authorizing the construction of a two-story duplex—one to be constructed on lot 27 and the other on lot 28. Plaintiff began construction of these buildings on Thursday, April 19. Foundations were poured and brick work commenced by the time the city revoked the permits "for cause" 6 working (11 calendar) days later.[6]

The R-3 general residence district requires 2,500 square feet of lot area per dwelling unit (section 7.5—3); however, if unimproved, a two-family dwelling may be constructed if the gross lot area is at least 3,750 square feet (section 7.5(2)). Plaintiff's lots are at least 3,850 square feet each. After receiving complaints from the city alderman and president of the Edison Park Community Council, the building commissioner determined the lots were a single improved zoning lot and not within the exception. The building permits were revoked on May 1, 1973.

On May 3, 1973, plaintiff filed suit in the circuit court of Cook County seeking a temporary and permanent injunction to enjoin the city from withholding and revoking the building permits. Defendants, in their answer, alleged the matter was not a proper one for the chancery division, that plaintiff had no clear legal right to the issuance of a permit, and that the relief requested was in the nature of mandamus.

At the hearing on June 11, 1973, Michael O'Laughlin was the only witness called by plaintiff. Defendants called several witnesses to testify regarding the classification of the property as a single improved zoning lot and its failure to satisfy the zoning requirements, as well as the detrimental effect such buildings would have on the area. Defendants urged that plaintiff was intentionally trying to circumvent the zoning ordinance by constructing two duplex residences where only one was allowed by the municipal code. Defendants claimed the tract was a single improved zoning lot and as such could not be divided without meeting the bulk regulations for an R-3 district as specified in section 5.7(2) of the zoning ordinance. The trial court entered its order on July 5, 1973, requiring defendants to restore the building permits and other papers necessary to permit plaintiff to resume construction. Defendants sought to stay this order in the trial court, but were unsuccessful. A similar motion was denied by this court without prejudice to the rights of the defendants upon determination of this appeal.

As previously noted, according to papers filed in this court on February 20, 1975, since the time the injunction issued and defendants' notice

---

[6] Plaintiff obtained his building permits on Thursday and began construction work the next day which was Good Friday and worked through the Easter weekend while city offices were closed. Thus, it was 11 calendar days and 6 working days after the permits were issued that they were revoked.

of appeal was filed, plaintiff allegedly has conveyed both properties to third parties. The duplex on lot 28 was conveyed to Joseph and Dorothy Piechuta on December 1, 1973, and lot 27 with its duplex was conveyed to Delio and Rosalie Napoli on May 3, 1974. We were informed at oral argument that construction proceeded after July 5, 1973, although we do not know the exact status of that development. The defendants filed with this court on February 24, 1975, a response to plaintiff's motion to dismiss filed February 20, 1975. The defendants filed a notice of lis pendens[7] (as to the subject property and zoning dispute) with the office of the recorder of deeds of Cook County, Illinois, on September 28, 1973.[8]

## I.

The Municipal Code of Chicago, Illinois (1973), chapter 194A, section 7.5—3, requires that in a R-3 general residence district:

> "[T]here shall be provided not less than 2,500 square feet of lot area per dwelling unit."

The entire parcel purchased by plaintiff was described as being 50 x 160, two 25-foot lots of record. The lots of record, for which plaintiff obtained building permits for two-family dwellings, were no more than 4,000 square feet each—1,000 square feet less than that required by the ordinance. Therefore, plaintiffs permits were clearly not within the bulk provisions for an R-3 general residence district.

However, the zoning ordinance has other provisions which provide for exceptions to the standard bulk regulations. Section 7.5(2) deals with "Lot Area—Use and Bulk Regulations." This section specifically provides that in an R-3 district on an unimproved lot of record, a two-family dwelling may be established if the gross lot area is at least 3,750 square feet. If this provision applies to plaintiff's property, the permits were validly issued.

In order to determine if the exception of section 7.5(2) applies to plaintiff's property, we must determine if his property was an unimproved lot of record.

There are two types of lots defined in the zoning ordinance. A *"lot of record"* is an area of land designated as a lot on a plat of subdivision

---

[7] "Lis pendens" means a pending suit. A purchaser, while a suit is pending, acquires the seller's interest subject to such decree as may be rendered. *Marshall v. Solomon* (2nd Dist. 1948), 335 Ill.App. 302, 308, 81 N.E.2d 777; 25 I.L.P. *Lis Pendens* § 2 *et seq.* (1956).

[8] This court may take judicial notice of matters shown in public records. (See Ill. Rev. Stat. 1973, ch. 51, par. 48a and b, and ch. 116, par. 43.103; *Nordine v. Illinois Power Co.* (1965), 32 Ill.2d 421, 428, 206 N.E.2d 709.) Therefore, as the filed copy of the "lis pendens" notice has been called to our attention, we shall take judicial notice of the same.

recorded or registered pursuant to statute (section 3.2). There is no controversy over the fact plaintiff is owner of two lots of record, lot 27 and lot 28. The second lot defined by statute is a "zoning lot." A *"zoning lot"* is "*   *   *   a single tract of land located within a single block, which (at the time of filing for a building permit) is designated by its owner or developer as a tract to be used, developed, or built upon as a unit, under single ownership or control. Thereafter, a 'zoning lot or lots', may or may not coincide with a lot of record." (Section 3.2.) There is a controversy as to whether plaintiff's tract is a single zoning lot, and whether section 7.5(2) refers to zoning lots or lots of record.

In determining whether the two lots of record composed a single zoning lot, it is noted that the dwelling on the property, when plaintiff made his purchase, was built prior to the 1957 zoning ordinance. There is no recorded evidence as to whether the builder of the original home considered lots 27 and 28 as a single unit. It was established by testimony that the original house was located solely on lot 27. However, the permit issued for the construction of a garage on the property in 1948 described the parcel as a single unit—6753-55 Oshkosh—a lot 50 x 156 feet. The garage building permit indicated the affirmative intent to consider the two lots as a single developed tract. The fact the building permit was issued prior to the 1957 ordinance, which defined a zoning lot, has no effect on considering the two lots as a single unit as defined by the present zoning ordinance. See *Ganley v. City of Chicago* (1st Dist. 1974), 18 Ill.App.3d 248, 252-53, 309 N.E.2d 653.

■ Plaintiff destroyed the house and garage which stood on lot 27, but this does not reinstate the lot as an unimproved zoning lot. Once a lot is developed it may not be subdivided unless it meets the bulk provisions for the district in which it is located. (Section 5.7—2.) We believe the evidence here established that prior to the date plaintiff purchased the tract, it had been used as a single improved zoning lot.

Once a lot of record is improved it becomes subject to the definition of a zoning lot under section 3.2. Once a lot of record becomes a part of a "zoning lot or lots" and is improved, it is no longer an unimproved lot eligible for the exception to the zoning requirements under section 7.5(2). Thus in this case, plaintiff cannot claim the benefit of the 3,750 square feet exception of section 7.5(2).

■■ Plaintiff's application for a building permit—two dwelling units for each lot—requires a lot of at least 2,500 square feet per unit or a total of 5,000 square feet of land for lot 27 and a like amount for lot 28. Lots 27 and 28 are each approximately 3,850 square feet. Based on the record, plaintiff fails to meet the requirements of either section 7.5—3 or 7.5(2). The only way plaintiff could avoid the application of the

5,000 square foot requirement for a two-family dwelling, without having the ordinance declared invalid, is to establish lot 28 was never intended to be part of the development on lot 27, and it is a separate unimproved lot of record eligible for the lot size reduction of section 7.5(2). However, in light of the definition of a zoning lot and a lot of record, and the request for the garage building permit which linked the development of the two lots as a unit, in our opinion, lots 27 and 28 were a single zoning lot. Likewise we find the record established that lots 27 and 28 were improved lots and not unimproved lots as described in the exception of section 7.5(2). Therefore, the building permits were issued in violation of the zoning ordinance's minimum lot area requirements.

## II.

Plaintiff urged before the trial court that even if the building permits were illegally issued, the city is estopped from revoking them because plaintiff relied on them to substantial economic detriment. The plaintiff cited *City of Chicago v. Grendys Building Corp.* (1st Dist. 1972), 4 Ill. App.3d 634, 281 N.E.2d 708, to support his theory that the city should be estopped from revoking the building permits once an applicant relies on the permits. Yet in *Grendys*, 8 months lapsed before the city notified the applicant of the revocation, and the applicant had spent $80,000 relying on his permit.

The defendants argue that the issuance of the illegal permits was beyond the authority of the city employee and cannot bind the city. (*Johnson v. City of Chicago* (1st Dist. 1969), 107 Ill.App.2d 182, 188, 246 N.E.2d 115.) It is clearly established where a permit is validly issued, the applicant is entitled to complete construction where there is a good faith reliance on the permit. *City of Chicago v. Zellers* (1st Dist. 1965), 64 Ill.App.2d 24, 29, 212 N.E.2d 737.

In the case at bar, the permits were illegally issued in violation of the zoning ordinance minimum lot area requirements. The city claims the plaintiff had no right to rely on the permits since he should have known they were illegal. (*Johnson*, 107 Ill.App.2d 182, 190.) In our opinion, when a building permit is illegal, the city cannot be bound unless its agents induced the applicant to rely on the invalidity, unless the city was unnecessarily tardy in notifying the applicant of its mistake, or unless the party relying on said permit would suffer a substantial loss and the municipality would be permitted to stultify itself by refusing to permit the party to proceed. (See *Cities Service Oil Co. v. City of Des Plaines* (1961), 21 Ill.2d 157, 161, 171 N.E.2d 605.) This court in *People ex rel. Beverly Bank v. Hill* (1st Dist. 1966), 75 Ill.App.2d 69, 74, 221 N.E.2d 40, cited *Cities Service*:

" '[A]nyone dealing with a governmental body takes the risk of having accurately ascertained that he who purports to act for it stays within the bounds of his authority, and that this is so even though the agent himself may have been unaware of the limitations on his authority. * * *' "

■■ In the present case, estoppel may not be used to prevent the city from revoking the permit. The city notified the plaintiff within 6 working days (11 calendar days) of the invalidity of the permits, and it did nothing to induce plaintiff to rely on the permits. Plaintiff had every opportunity to know that the issuance of the permits was in violation of the municipal zoning code. It appears that plaintiff's alacrity in demolishing the old building and commencing construction, even laboring on Easter Sunday (generally not a construction workday), was to take advantage of the illegal permits.

While the city was erroneously prevented from revoking the permits by the trial court, we are now presented with a difficult situation since the buildings apparently have been substantially completed and stand in violation of the code. Both this court and the trial court denied stays of the injunction against revoking the permits, and now substantial investments have been made in completing the buildings. However, lis pendens notices of the instant litigation were timely filed. Also, this court's denial of the stay was entered without prejudice to the rights of the defendants upon determination of this appeal. Thus, the construction proceeded with knowledge of the pending appeal. Since the appeal is decided in defendants' favor, an equitable remedy should be fashioned to protect the rights of all parties involved.

Plaintiff, with proper notice of this pending litigation, took the chance the defendants might be right and therefore is in no position to complain. (See *Williams v. City of Bloomington* (4th Dist. 1969), 108 Ill.App.2d 307, 311, 247 N.E.2d 446.) The fact that plaintiff sold the property and someone proceeded to complete the building, notwithstanding the instant litigation, cannot defeat the rights of the city to seek compliance with the zoning ordinance. Zoning regulations affect the use of property, and under the facts before this court the purchaser of the subject property acquired the property subject to the right of the city to enforce its zoning and building regulation plus the resolution of the instant litigation.

As this case must be remanded to the circuit court of Cook County, we believe it appropriate to indicate the following guideline applicable to this situation. Since 1923 (Ill. Rev. Stat. 1923, ch. 24, par. 69(a)), our legislature has provided certain provisions for violations of zoning ordinances. Section 11—13—15 of the Municipal Code (Ill. Rev. Stat. 1973, ch. 24, par. 11—13—15) now provides in pertinent part:

"In case any building or structure, * * * is constructed * * * in violation of an ordinance or ordinances adopted under Division 13, * * * the proper local authorities of the municipality, * * * in addition to other remedies, may institute any appropriate action * * * (1) to prevent the unlawful construction * * * or use, (2) to prevent the occupancy of the building * * * (4) to restrain, correct, or abate the violation. * * *

In any action or proceeding for a purpose mentioned in this Section, the court with jurisdiction of such action or proceeding has the power and in its discretion may issue a restraining order, or a preliminary injunction, as well as a permanent injunction, upon such terms and under such conditions as will do justice and enforce the purposes set forth above."

The power of the municipality to require a violator of its zoning ordinance to correct or abate violations pursuant to section 11—13—15 has been sanctioned by the courts of this State. See *City of Chicago v. Exchange National Bank* (1972), 51 Ill.2d 543, 283 N.E.2d 878 affirming this court's opinion in (1st Dist. 1971), 133 Ill.App.2d 370, 273 N.E.2d 484 which directed a change in an apartment building constructed in violation of the zoning ordinance; also *Anundson v. City of Chicago* (1970), 44 Ill.2d 491, 256 N.E.2d 1 affirming this court in (1st Dist. 1968), 97 Ill.App.2d 212, 240 N.E.2d 407; *City of Chicago v. Handler* (1st Dist. 1972), 7 Ill.App.3d 940, 288 N.E.2d 714; *City of Chicago v. Vella* (1st Dist. 1972), 7 Ill.App.3d 1009, 288 N.E.2d 610; *City of Chicago v. Chicago National Bank* (1st Dist. 1972), 7 Ill.App.3d 1011, 288 N.E.2d 611; *Williams v. City of Bloomington, supra*; and *City of Aurora v. Meyer* (1967), 38 Ill.2d 131, 136, 230 N.E.2d 200.

■■ We therefore remand this cause to the circuit court of Cook County with directions that the order entered by that court on July 5, 1973, be vacated, the permanent injunction issued pursuant to said order be dissolved, and that a new order be entered in accordance with the views expressed in this opinion, including an appropriate order in favor of the defendant City of Chicago pursuant to section 11—13—15.

### III.

In their third issue defendants discuss the impropriety of bringing this cause before the chancery division of the circuit court. Plaintiff requested the equitable remedy of an injunction and alleged irreparable harm and the inadequacy of the legal remedies available, including mandamus. One of the trial courts of the chancery division of the circuit court heard the cause.

Defendants, in support of their position, cite cases in which a man-

damus was originally sought to compel the issuance of a building permit; they cite no cases holding mandamus is the only remedy to be sought.

*Ehrlich v. Village of Wilmette* (1935), 361 Ill. 213, 222, 197 N.E. 567, held the equity court (as then described) had jurisdiction to enjoin the enforcement of a zoning ordinance against a particular piece of property. The supreme court affirmed the remedy of an injunction against defendant's argument that mandamus was the proper remedy. In their own brief defendants cite a case in which the supreme court upheld an injunction against a building permit revocation. *Cities Service Oil Co. v. City of Des Plaines.*

In the case at bar, the protection of property rights is involved, irreparable harm is alleged, an injunction is a proper remedy, and a court in the chancery division properly heard the cause.

The judgment of the circuit court of Cook County is reversed and remanded with directions.

Reversed and remanded with directions.

STAMOS and LEIGHTON, JJ., concur.