Hillsborough,
No. 4668.

HUDSON *v.* CONRAD J. PARADISE *& a.*

Argued June 4, 1958.

Decided July 1, 1958.

*Harrison E. Smith* and *Nelson, Winer & Lynch* (*Mr. Winer* orally), for the plaintiff.

*Guertin & Widener* (*Mr. Guertin* orally), for the defendants.

DUNCAN, J. By deed dated December 1942, the defendants acquired certain premises in Hudson on Webster Street, also known as Litchfield Road, situated approximately one and three-quarters miles north of Taylor Falls Bridge, so-called, which spans the Merrimack River between Nashua and Hudson. The premises were in use for farming and residential purposes when the town adopted a zoning ordinance in 1942. In November 1954, the named defendant sought and obtained a variance from the terms of the ordinance, permitting him to operate a filling station; and since 1955 he has operated a junk yard on the premises.

The ordinance of 1942 established three zones or districts within the town: residential, business or commercial, and industrial. The boundaries of the latter two zones were designated by a zoning map prepared by the town planning board (RSA ch. 36), showing a small business district near the Taylor Falls Bridge, and a somewhat larger industrial district along the railroad line, southerly of the business district and separated from it by part of the residential zone. The balance of the town not within the business and industrial districts was zoned as residential. The defendants' property is situated in this zone, about three-fourths of a mile south of the Litchfield line.

In 1956, a more elaborate ordinance was adopted in substitution for the 1942 ordinance, establishing four zones, the fourth to be known as a rural zone. By this ordinance the operation of junk yards in the residential, commercial, and rural districts is specifically prohibited. The ordinance contains a provision permitting continuance of lawful uses made prior to its adoption, although nonconforming in character. The defendants maintain that the use of their premises for a junk yard was lawful prior to the 1956 ordinance because the ordinance of 1942 did not purport to forbid such a use. They further maintain that if the 1942 ordinance is construed to prohibit such a use the ordinance is invalid because arbitrary and unreasonable in that it classified by far the major portion of the town as residential — a process which the defendants describe as a "waste-basket" process of zoning. *Kimball* v. *Blanchard*, 90 N. H. 298. See Reps, The Zoning of Undeveloped Areas, 3 Syracuse L. Rev. 292.

We therefore turn to a consideration of the ordinance of 1942, and the effect of its provisions to restrict the use of the defendants'

premises to residential purposes only. The ordinance did not purport to define in any detail the uses permitted in the residential district. In the business district, use was permitted for any residential purpose and for stores, offices, amusement places, and garages. In the industrial district, any use permitted in the other two districts was allowed, plus manufacturing.

It is apparent from the scheme of the ordinance as a whole that the major portion of the town, zoned as residential, was intended to be the most restricted district, and to be used primarily for residential purposes. Provisions of the ordinance with respect to this zone confirm this interpretation by referring to the construction of "small" accessory buildings "not used for living purposes" — in farming areas. The ordinance "must be interpreted to require that uses established in a residential district shall be primarily residential . . . . " *Dumais* v. *Somersworth*, 101 N. H. 111, 113.

It does not follow that because all properties not zoned as commercial or industrial were zoned as residential, the ordinance was necessarily invalid. "The regulation was one which might lawfully be made, if the end sought to be achieved thereby has any substantial relation to any of the objects comprehended within the term 'the police power.' " *Sundeen* v. *Rogers*, 83 N. H. 253, 258. It cannot be said that the ordinance disregarded "the character of the district and its peculiar suitability for particular uses," or would not tend to conserve values and encourage appropriate use. RSA 31:62. It is not questioned that in 1942 the bulk of the land in the town apart from the sections zoned for business and industry was rural property, used primarily for farming and residential purposes. It was proper "to take into account the probable future development of the entire region." *Wilbur* v. *Newton*, 302 Mass. 38, 42. See also, *Edgewood Civic Club* v. *Blaisdell*, 95 N. H. 244.

The zones established for business and industry were not established by individual pieces of property, rather than by districts. Properties adjoining the defendants' were not used or zoned for business, as was the property which adjoined the plaintiff's farm on the Daniel Webster Highway in *Kimball* v. *Blanchard*, *supra*. Moreover the prohibition of junk yards along principal highways has long been a recognized feature of zoning. See 26 Cal. L. Rev. 175, 184, cited in *Kimball* v. *Blanchard*, *supra*, 299.

The major part of the town being used, and apparently best adapted, to residential and farming uses was not wrongly classi-

fied merely because its area was proportionately large. *Spector* v. *Building Inspector*, 250 Mass. 63. The classification appears to have been made with forethought "in terms of the formulation of an overall master plan for [town] development and land use." Harr, In Accordance With a Comprehensive Plan, 68 Harv. L. Rev. 1154, 1171. See RSA 31:62; 36:13, 15.

In short, the zoning of the defendants' premises in 1942 as residential, and the implied restriction against operating a junk yard in the residential district are not shown to have been unreasonable. The classification established by the ordinance of 1942 cannot be held arbitrary *per se*, so as to invalidate the ordinance as a matter of law. The first question transferred is answered in the affirmative.

It follows that the second question also is answered in the affirmative. . The 1956 ordinance is designed to further orderly development of the town. The use of their land for a junk yard made by the defendants for the period just prior to adoption of the 1956 amendment was not permitted by the 1942 ordinance, and may not be continued as a lawful nonconforming use under the 1956 ordinance.

In accordance with the agreement of the parties, the order is

*Decree for the plaintiff.*

All concurred.