No. 60,675

James Goodwin, *et al., Appellees,* v. The City of Kansas City, Kansas, a Municipal Corporation, *Appellant.*

(766 P.2d 177)

Opinion filed December 9, 1988.

*N. Cason Boudreau,* deputy city attorney, argued the cause and was on the briefs for appellant.

*Kevin E. Koch,* of Turner, Vader & Koch, Chtd., of Kansas City, argued the cause and *Rodney L. Turner,* of the same firm, was with him on the briefs for appellees.

The opinion of the court was delivered by

HERD, J.: This is an appeal by the City of Kansas City, Kansas, from the trial court's finding that the City had taken plaintiffs Goodwins' property without due process of law in violation of the Fourteenth Amendment of the United States Constitution, and from the award of damages therefrom.

In 1983 James and Stasia Goodwin purchased two contiguous tracts of residentially zoned land north of K-32 highway, within the city limits of Kansas City. The land was purchased for the purpose of supplying fill dirt for construction.

Before purchasing the land, James Goodwin contacted Chief Building Inspector Robert Wiggins to see what City restrictions might apply in operating the fill dirt business. Goodwin was assured by Wiggins he would need only a hauling permit. Goodwin fulfilled this requirement, and the business went smoothly for about a year and a half with no complaints by the City.

In September of 1984 the Goodwins petitioned for a zoning reclassification, which was denied after strong community protest. On November 30, 1984, Raymond Bond, the Director of the City Planning Division, and several other city employees visited the Goodwins' land. They advised the Goodwins they were in violation of the City zoning ordinances and could no longer remove dirt without a special use permit. This was confirmed by a letter further stating that excavation without a permit would result in "appropriate legal action."

The Goodwins filed suit for damages resulting from their inability to continue their business, which they claimed was a lawful nonconforming use. The case was tried to the court. It found the Goodwins suffered a taking of property without just compensation and awarded damages.

The first issue on appeal is whether this court has jurisdiction if the Goodwins failed to exhaust their administrative remedies.

Were the issue the reasonableness of the zoning, it would involve the City's legislative enactment, which requires exhaustion of administrative remedies before the courts acquire jurisdiction. However, the issue here is whether the Goodwins' have

a vested right to continue their selling of fill dirt in an area zoned residential under the theory of nonconforming use. This issue is judicial rather than legislative and thus requires no exhaustion of administrative remedies. See *Union Quarries, Inc. v. Board of County Commissioners*, 206 Kan. 268, 478 P.2d 181 (1970). The trial court correctly took jurisdiction over this matter.

The next issue is controlling in this case. It is whether the trial court erred in holding the Goodwins' excavation business was a lawful nonconforming use in an area zoned residential.

In its letter to the Goodwins, the City stated that the "excavation project [had] validly existed" prior to 1984. Throughout the trial, the City conceded the Goodwins' use of their property had been legal prior to 1984. The City claimed, however, that the Goodwins were presently in violation of the zoning ordinances because of revisions to the code which had been enacted on September 7, 1984. Under the revised code, a special use permit is required for dirt removal extending over a period of 60 days or in excess of 5,000 cubic yards. The new ordinances provide that a nonconforming use of land cannot be extended beyond the area it occupied before the ordinance was passed without a permit. Such an extension subjects the landowner to a maximum fine of $500 for each occurrence.

Accepting the City's agreement that the Goodwins' use of their land had been lawful prior to the September 1984 zoning revisions, the trial court found the Goodwins had a valid nonconforming use and focused on the issue of whether the Goodwins' continuance of their business would constitute an impermissible extension of such.

Both parties refer to the City's zoning code existing prior to September 1984, yet did not make it a part of the record either at trial or on appeal. Since the establishment of a nonconforming use presupposes that the nonconforming use was legal and preexisted the zoning ordinance against it, we find it necessary to determine the status of the Goodwins' use at the time it commenced. Thus, it is necessary for us to examine the zoning code in existence at that time. We therefore take judicial notice of the Kansas City, Kansas, zoning code in existence prior to September 1984, under authority of K.S.A. 60-409(b)(1):

"(b) Judicial notice may be taken without request by a party, of (1) private acts and resolutions of the Congress of the United States and of the legislature of this state, and duly enacted ordinances . . ."

and K.S.A. 60-412(c) and (d):

"(c) The reviewing court in its discretion may take judicial notice of any matter specified in K.S.A. 60-409 whether or not judicially noticed by the judge.

"(d) A judge or a reviewing court taking judicial notice under subsection (a) or (c) of this section of matter not theretofore so noticed in the action shall afford the parties reasonable opportunity to present information relevant to the propriety of taking such judicial notice and to the tenor of the matter to be noticed."

See *State v. McKay*, 217 Kan. 11, 14, 535 P.2d 945 (1975).

Both parties were afforded a reasonable opportunity by brief to present information relevant to the propriety of taking such notice and the tenor of the matter to be noticed. After carefully considering the briefs, we hold that taking judicial notice of the Kansas City, Kansas, zoning ordinance in effect prior to September 1984 is relevant and essential to the resolution of this dispute.

Kansas City, Kansas, had a general zoning ordinance, adopted in 1974, which zoned the land later purchased by the Goodwins as A-1, single family residential. In addition to placing the land purchased by the Goodwins in district A-1 (section 27-63[1]), the ordinance provided that the regulations should be uniformly applied and that no land should be used except in conformity with the regulations pertaining to the district in which it is located (section 27-64). At section 27-76(1), the ordinance stated the permitted uses in an "A-1" one-family residential district. Commercial dirt excavation was not listed as a permitted use. Thus the use was not permitted, since it did not conform and was not preexisting.

At section 27-103(1), the ordinance provided for the issuance of special use permits for "[e]xtraction of raw material, such as rock, gravel, sand, and the like." The procedure for applying for such a permit followed. Thus, we see that the zoning law in force at the time the Goodwins bought the land and commenced using it provided a specific procedure to be followed for lawful excavation. The Goodwins failed to follow this procedure.

The right of a city to zone property within its boundaries without compensation for resulting diminished values is founded in statutory law and its constitutionality is so generally accepted it requires no further discussion here. See *West v. City of Wichita*, 118 Kan. 265, 234 Pac. 978 (1925).

However, the matter of nonconforming uses requires our at-

tention. A "nonconforming use" is defined as "[a] use which lawfully existed prior to the enactment of a zoning ordinance, and which is maintained after the effective date of the ordinance, although it does not comply with the zoning restrictions applicable to the district in which it is situated." 1 Anderson, American Law of Zoning § 6.01 (3d ed. 1986). See *Johnson County Memorial Gardens, Inc. v. City of Overland Park,* 239 Kan. 221, 718 P.2d 1302 (1986).

The Goodwins' use of the land did not exist prior to the enactment of the 1974 zoning ordinance which made excavation unlawful unless a special permit was granted.

Kansas recognizes a nonconforming use as a vested right pursuant to K.S.A. 12-709, which provides that zoning ordinances "shall not apply to the existing use of any building or land." Only vested rights have a sufficient property interest to require due process protection. *Stoldt v. City of Toronto,* 234 Kan. 957, 964, 678 P.2d 153 (1984).

From the beginning, drafters of zoning legislation have believed that some uses of land were incompatible with others, and that such land could be more efficiently used if the uses were separated. Zoning was considered a refinement of the common law of nuisance. See *Euclid v. Ambler Co.,* 272 U.S. 365, 71 L. Ed. 303, 47 S. Ct. 114 (1926). The zoning of communities in which use districts are rigidly drawn is called Euclidian zoning, after the village which litigated the foregoing case. See 1 Anderson, American Law of Zoning § 6.02.

However, the Euclidian model, with its tidy separation of land uses, cannot be completely followed. In most communities land to be zoned is not vacant, but instead occupied by free enterprising landowners. For legal and political reasons, zoning drafters avoided confrontation with these landowners by permitting existing uses to continue, but reduced their life expectancy by limiting the landowners' right to change, expand, or recommence after abandonment, with minimal exceptions. See 1 Anderson, American Law of Zoning § 6.04.

Courts have recognized and approved this policy of restriction and eventual elimination by ruling that the right to a nonconforming use is to be strictly construed. See, *e.g., Wyatt v. Board of Adjustment-Zoning, Etc.,* 622 P.2d 85 (Colo. App. 1980); 1 Anderson, American Law of Zoning § 6.07.

It is essential to the establishment of a nonconforming use that the use be commenced prior to the enactment of the ordinance restricting such use. See, *e.g., City of Las Cruces v. Huerta,* 102 N.M. 182, 692 P.2d 1331 (1984). A nonconforming use may not be established through a use which from its inception violated a zoning ordinance. Such use has no lawful right to continue. See, *e.g., Hudson v. Paradise,* 101 N.H. 389, 143 A.2d 421 (1958); 1 Anderson, American Law of Zoning §§ 6.10-6.14.

Following the reasoning that nonconforming uses are inconsistent with good land use patterns established by zoning regulations, one claiming a nonconforming use is required by most courts to bear the burden of proving by a preponderance of the evidence that his claimed nonconforming use existed prior to the zoning ordinance. See, *e.g., Lexington v. Simeone,* 334 Mass. 127, 134 N.E.2d 123 (1956); *Bevans et ux. v. Twp. of Hilltown,* 72 Pa. Commw. 227, 457 A.2d 977 (1983); 1 Anderson, American Law of Zoning §§ 6.09-6.10. The Goodwins make vague references to excavation occurring on the land before their purchase, but offer no evidence in support of that assertion. Thus, they have not met their burden of showing such use existed prior to the land being zoned residential.

The Goodwins claim the action of the building inspector established a legal nonconforming use of their land and, thus, a vested right which was taken from them by the City. We disagree.

It is not uncommon for municipal officers to erroneously advise landowners they may use land for a purpose which violates zoning ordinances. The general rule applied by the courts in such instances is that a nonconforming use of land may not be established through such statements as the officer is without authority to violate the zoning ordinance. See, *e.g., Johnson v. City of Chicago,* 107 Ill. App. 2d 182, 246 N.E.2d 115 (1969); 1 Anderson, American Law of Zoning §§ 6.11-6.15. In this case, the building inspector was referring to the uniform building code when he told the Goodwins there were no restrictions on excavation, because the land was in a remote area. A building code is subservient to a city's zoning ordinances. The zoning ordinances had no such exception.

A landowner is charged with knowledge of the zoning ordinances. *Snyder v. Waukesha County Zoning Board,* 74 Wis. 2d

468, 477, 247 N.W.2d 98 (1976). Approval by city officials of a use which is prohibited by the ordinances, without the issuance of a special permit, is without effect. *Building Inspector of Lancaster v. Sanderson*, 372 Mass. 157, 167; 360 N.E.2d 1051 (1977); 1 Anderson, American Law of Zoning § 6.15.

In *Benson v. City of De Soto*, 212 Kan. 415, 510 P.2d 1281 (1973), we held equity required that a city be estopped from declaring its zoning ordinance *invalid* where a landowner detrimentally *relied* on the ordinance. We held a city may be subject to estoppel where it has acted within its authority and the application of estoppel will not interfere with its exercise of government functions. We cautioned, however, that there can never be estoppel against a city when it acts beyond its authority. A city is without authority to nullify its ordinances without following prescribed procedures dictated by due process. Landowners have the right to rely on strict compliance with those ordinances legislated by the city. See *City of Belleville v. Hallowell*, 41 Kan. 192, 21 Pac. 105 (1889).

In *Leigh v. City of Wichita*, 148 Kan. 607, 83 P.2d 644 (1938), the landowner used her property for an apartment house in violation of existing zoning ordinances. The City of Wichita acquiesced in the landowner's remodeling for this purpose, and when the landowner built a garage with two apartments above, the building inspector found it lawful and issued a permit. The City's apparent approval of this use continued until it revised its ordinances, when it then attempted to stop the use. The landowner brought an action to enjoin the City. We held a use unlawful from its inception could not be claimed as a valid nonconforming use exempt from zoing restrictions, despite previous acquiescence by the City.

The Goodwins' use of their land in the residential zone was illegal from its inception and, thus, could not ripen into a nonconforming use. See *Petti v. Rechmond Heights*, 5 Ohio St. 3d 129, 449 N.E.2d 768 (1983). As we have previously noted, we must construe the law strictly against nonconforming uses as a matter of public policy, with the party claiming a nonconforming use bearing the burden of proof. We hold there is no substantial competent evidence to support the district court's findings of fact. Therefore we must reverse the district court.

Since the Goodwins had no vested right to the use to which

they put their land, there was no taking and thus no compensable damages. The judgment is reversed.