(80 P.3d 407)

No. 89,925

HOMER MORGAN, *Appellant/Cross-Appellee*, v. CITY OF WICHITA, KANSAS, *Appellee/Cross-Appellant*.

—

Opinion filed December 12, 2003.

*Robert W. Kaplan*, of Kaplan, McMillan and Harris, of Wichita, for appellant.

*Brian K. McLeod,* assistant city attorney, and *Gary E. Rebenstorf,* city attorney, for appellee.

Before ELLIOTT, P.J., MALONE, J., and ROGG, S.J.

ROGG, J.: Plaintiff Homer Morgan appeals the district court's decision to grant summary judgment in favor of defendant City of Wichita (City). The City cross-appeals from the court's decision as well. Morgan claims the district court committed error by granting summary judgment to the City. The City cross-appeals, claiming that the trial court should have dismissed the case on jurisdictional grounds and that the trial court erred in determining that Morgan did not have to join neighboring landowners. We affirm.

This appeal concerns the use of a particular piece of property owned by Homer Morgan. The subject property is located at 518 North Anna in Wichita, Sedgwick County, Kansas. The property was annexed by the City in 1954. In 1970, Morgan constructed a building on the property, and since November 1977, the property has been leased to a variety of different parties. Currently, the south half of the property is zoned as limited commercial and the north half of the property is zoned as B multifamily.

In November 1977, Morgan leased the property to David L. Wiley for use as a tavern. After that lease expired, Morgan leased the property to Robert Aldershof and Cassandra Harnden. Morgan brought suit to evict Aldershof and Harnden on the grounds that they had failed to operate a tavern on the property. Morgan won a judgment and eventually had them evicted.

In November 1981, Morgan leased the property to the V.F.W. Wichita Memorial Post #3115 (VFW). The VFW is a not-for-profit corporation incorporated under Kansas law. In 1981, the VFW applied for a cereal malt beverage license with the City. The record indicates that the VFW was issued a cereal malt beverage license in 1982, 1983, 1985, and 1986. City records reflect that the VFW's license was not renewed in 1987. For each year from 1989 to 1999, the VFW sought and received a liquor license from the City. Each year, the VFW applied for and was given a liquor license as a class A club. In addition, from 1990 to 1997, the VFW submitted renewal applications for a license from the Alcoholic Beverage Con-

trol Division of the Kansas Department of Revenue. Again, the renewal applications indicated that the VFW was seeking a class A club license.

In January 1991, the City amended its ordinances to prohibit the establishment of private clubs, taverns, and drinking establishments within 200 feet of any church, public park, residential zoning district, or public or parochial school. In March 1996, the City adopted the Wichita-Sedgwick County Unified Zoning Code (Unified Zoning Code) as its zoning regulations.

The VFW leased the property until May 2000, at which time the VFW moved to a new location. In August 2000, Morgan leased the property to Dan Cochran for use as a drinking establishment. Cochran apparently applied for a drinking establishment license, but the City denied his application. In May 2001, Morgan leased the property to himself as a representative of Silent Scope, Inc., doing business as Orchard Pub & Club. Morgan applied for and received a state liquor license for the club. Morgan also applied for a city liquor license as a drinking establishment, but the City's Office of Central Inspection denied his application on the grounds that the zoning ordinances did not allow "by right" a proposed drinking establishment on the property.

Thereafter, Morgan filed a petition for a writ of mandamus compelling the City to issue the license. Morgan later amended his petition to state that he was seeking a declaratory judgment on whether use of the property constituted a lawful nonconforming use. Morgan continued to seek a writ of mandamus.

The City answered Morgan's petition and later filed a motion for full or partial judgment on the pleadings. The City argued, among other things, that a writ of mandamus was not an appropriate remedy in this case, that Morgan had failed to exhaust his administrative remedies, and that Morgan had failed to join the necessary parties under K.S.A. 60-219 and 60-1712. Morgan responded to the City's motion and agreed to dismiss his request for a writ of mandamus. Morgan, however, continued to assert that he was entitled to a declaratory judgment. The district court in a brief journal entry denied the City's motion for judgment on the plead-

ings. The court concluded that it had jurisdiction to consider Morgan's declaratory judgment action.

On July 10, 2002, Morgan filed a nonconformity registration form with the City. On the form Morgan stated that the property had been "operated as an establishment for sale and consumption of alcoholic beverages since construction of the premises prior to 1954."

Later in July, the City filed a motion for summary judgment. The City argued that: (1) the VFW's use of the property was a fully conforming use; (2) even if the VFW's use was nonconforming, Morgan cannot shift to a less conforming use as a tavern or drinking establishment; and (3) the district court lacked jurisdiction because Morgan failed to register his alleged nonconformity prior to filing suit.

The district court concluded that the VFW's operations were a permitted use and, thus, there was no conforming use under the Zoning Code. The court granted the motion for summary judgment, and Morgan now appeals.

### Summary judgment

Morgan initially asserts that the district court erred by granting summary judgment in favor of the City. The standard of review for a motion for summary judgment is:

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." *Bergstrom v. Noah*, 266 Kan. 847, 871-72, 974 P.2d 531 (1999).

In the case at bar, the district court set forth its findings and conclusions concerning the City's motion for summary judgment in open court. The court commented:

"Some of the issues Mr. Kaplin raises certainly are subject to factual dispute, factual controversy, whether a Class A club selling beer and/or alcohol is truly any different than a tavern or drinking establishment selling beer and/or alcohol for profit. . . .

. . . .

"I'm going to find that notwithstanding the quite probable factual disputes on the issues I already covered, on a legal issue and based on the pleadings as they appeared to me, for purposes of this summary judgment motion, the main and first legal question I have to make is, was there a nonconforming or permitted use under the zoning code as the V.F.W. existed? And I find that under the zoning code, when the V.F.W. was operating as a fraternal—sorry—community assembly, which was a permitted use and was not a nonconforming use under the zoning code. The V.F.W. lost their lease or chose to give up its lease, not sure which, but in any event, the lease ended sometime in 2000, and there were attempts, I believe two separate attempts, to then come in and obtain licensure to operate the facility as a for profit tavern/drinking establishment, however you want to characterize it.

"Under the zoning code, those taverns/drinking establishments are separate and distinct from the V.F.W. community assembly. And as such, a tavern or a drinking establishment, any of those types of classifications other than a Class A community assembly entity, such as V.F.W. would be, would be a nonconforming usage. And there simply was no nonconforming—was no request for nonconforming usage made before the enactment of the ordinance restricting such use in this matter.

"Whether the issues—whether the issue of a tavern or drinking establishment being of the same general character of the V.F.W., that may be the case; that may not be the case. I simply don't know, but under the zoning code as it was presented to me, as a matter of law, the V.F.W. clearly was permitted use, taverns and drinking establishments clearly are nonconforming uses. And on that basis, I am going to grant the City's motion for summary judgment."

Morgan maintains that the court erred in its decision. Morgan alleges that the subject property was used to sell beer and alcohol prior to the property becoming subject to the zoning authority of the City. He further claims that since that time, there has not been a fundamental change in the use of the property, *i.e.*, the property has continually been used for the sale of beer and alcohol. As such, he argues that because there has not been a fundamental change in the use of the property, the property retains its status as a lawful, nonconforming use. Morgan cites three cases to support his arguments. See *Union Quarries, Inc. v. Board of County Commissioners*, 206 Kan. 268, 478 P.2d 181 (1970); *State v. Scherer*, 11

Kan. App. 2d 362, 721 P.2d 743 (1986); *Triangle Fraternity v. City of Norman*, 63 P.3d 1 (Okla. 2002).

Initially, the City asserts that Morgan cannot establish a lawful, nonconforming use. The City's argument continues that in the absence of a lawful, nonconforming use, Morgan's arguments concerning whether there has been a fundamental change in the use of the property are irrelevant. The City's predominant argument is that there cannot be a lawful, nonconforming use, because use of the property was "fully conforming" after at least 1996. Stated differently, the City claims that any alleged nonconformity in use became conforming following the City's adoption of the Unified Zoning Code in 1996.

In *Crumbaker v. Hunt Midwest Mining, Inc.*, 275 Kan. 872, 881, 69 P.3d 601 (2003), the Kansas Supreme Court discussed the concept of nonconforming use. The court noted that the concept of nonconforming use developed as a means to avoid confrontation with landowners by permitting landowners to continue their properties' preexisting uses. 275 Kan. at 881. The court also stated: "We have defined such an 'existing' or 'nonconforming use' as 'a lawful use of land or buildings which existed prior to the enactment of a zoning ordinance and which is allowed to continue despite the fact it does not comply with the newly enacted use restrictions.' " 275 Kan. at 881.

Under Kansas law, the right to a nonconforming use is to be strictly construed. See *Goodwin v. City of Kansas City*, 244 Kan. 28, 32, 766 P.2d 177 (1988). In addition, most courts place the burden of proving an alleged nonconforming use on the party claiming the nonconforming use. 244 Kan. at 33.

Morgan argues that the property could not lose its nonconforming status without evidence of a fundamental change in the property's use. This argument presupposes a nonconforming use.

The record reveals that in 1996 the City adopted the Unified Zoning Code. The 1996 version of the Unified Zoning Code included the definitions for the terms "Club, Class A" and "Community Assembly." The Code provided:

"Club, Class A means premises owned or leased by a corporation, partnership, business trust or association and which is operated thereby as a bona fide nonprofit

social, fraternal, or war veterans' club, as determined by the Director of Alcoholic Beverage Control of the Kansas Department of Revenue, for the exclusive use of the corporate stockholders, partners, trust beneficiaries or associates and their families and guests accompanying them."

The Code further provided: "Community Assembly means an establishment providing meeting, recreational, educational, or social facilities for a private membership or non-profit association, primarily for use by members and guests. Typical uses include fraternal organizations, 'Class A Clubs,' philanthropic and eleemosynary institutions."

The Code also sets forth the permitted uses for B multifamily district and limited commercial districts. According to the Code, community assembly is a permitted use under both B multifamily districts and limited commercial districts.

Following the adoption of the Unified Zoning Code, use of the property clearly conformed to the zoning regulations. At the time the Code was adopted in 1996, the VFW was leasing the subject property. The record indicates that the Kansas Department of Revenue considered the VFW to be a class A club in 1996. According to the Code, a class A club is characterized as a community assembly, which in turn is a permitted use under both B multifamily districts and limited commercial districts. Consequently, the VFW's use of the property fully conformed to the City's zoning regulations.

As previously mentioned, a nonconforming use is defined as " '[a] use which lawfully existed prior to the enactment of a zoning ordinance, and which is maintained after the effective date of the ordinance, although it does not comply with the zoning restrictions applicable to the district in which it is situated.' " *Goodwin*, 244 Kan. at 32. Here, the VFW's use complied with zoning restrictions applicable to the property. The property's use cannot be characterized as a nonconforming use.

In *Pennridge Dev. Ent. v. Volovnik*, 154 Pa. Commw. 609, 624 A.2d 674 (1993), a case cited by the City, Pennridge built an airport in 1966. At the time the airport was built, the township did not have a zoning ordinance; however, in 1970, the township enacted a zoning ordinance, which made the airport a nonconforming use.

Years later in 1987, the township enacted a second zoning ordinance which classified a portion of the airport's property as a conditional use. The issue in that case was whether the portion of the airport, which was zoned as a conditional use, remained a nonconforming use. In addressing that issue, the Pennsylvania court held that a conditional use is a permitted use. The court then stated: "Pennridge's nonconforming use was converted by the Township's 1987 zoning ordinance into a permitted use. Therefore, we hold that the trial court erred in determining that Pennridge retained a nonconforming use to operate an airport on the land at issue." 624 A.2d at 675-76.

In the case at bar, any alleged nonconformity in use became conforming following the City's adoption of the Unified Zoning Code in 1996. Morgan has failed to create a genuine issue of material fact as to whether the VFW's use conformed to the zoning regulations. As such, the court did not err in granting summary judgment on this issue.

### *Jurisdictional grounds*

The City cross-appeals and argues that the district court should have dismissed Morgan's action because the court lacked subject matter jurisdiction. The City contends that the district court lacked subject matter jurisdiction because (1) Morgan failed to register the alleged nonconforming use prior to commencing this action, and (2) Morgan failed to exhaust his administrative remedies. A challenge to the district court's subject matter jurisdiction raises a question of law, and as a result, this court's standard of review is unlimited. See *In re Marriage of Myers*, 30 Kan. App. 2d 1223, 1225, 56 P.3d 1286 (2002).

The City claims that the district court lacked subject matter jurisdiction because Morgan failed to register the alleged nonconforming use prior to filing suit. The City points to the 1996 and 2001 versions of the Unified Zoning Code and argues that Morgan is barred from asserting the alleged nonconforming use. In contrast, Morgan maintains that the City's arguments on this issue are without merit.

The 2001 version of the Unified Zoning Code discusses the registration of nonconformities. The Code provides in pertinent part:

"1. Rights conditional. The rights given to those using or owning property involving a nonconformity under this Art. VII or exemption under Sec. VII-A.3 are specifically conditioned on the registration of the nonconformity or exemption with the Zoning Administrator. Nonconformities or exemptions so registered shall be deemed to be lawful uses under the provisions of this Code, to the extent documented on the registration form.

"2. Registration process. Registration shall be required for nonconformities existing on the effective date of this Code, exemptions created by the adoption of the Code adopted on March 25, 1996, nonconformities arising because of a change in jurisdictional boundaries. There shall be no deadline for the registration required by this Sec. VII-I. The Zoning Administrator shall establish a process for the registration of nonconformities and exemptions and shall establish a system for keeping records of the same. The Zoning Administrator shall provide registration forms for this purpose."

The record in this case demonstrates that Morgan filed his petition in February 2002 and his first amended petition in March 2002. In July 2002, Morgan filed a nonconformity registration form with the City. Although Morgan filed his registration form after he had already filed suit, that fact does not prevent Morgan from asserting his claim that the property was a lawful, nonconforming one.

The Unified Zoning Code states that the rights given to an individual using or owning property involving a nonconformity under the Code are "specifically conditioned on the registration of the nonconformity." In this case, Morgan is not seeking to assert or enforce a right involving the nonconformity, rather, he is seeking a determination of whether the nonconformity exists. Consequently, the Code's provisions requiring registration of the nonconformity do not apply in this instance. The district court did not err in this regard.

Next, the City contends that under both the Unified Zoning Code and K.S.A. 12-759(d), Morgan had the "ability" to appeal the decision of the superintendent of Central Inspection to the Board of Zoning Appeals. As such, the City argues that Morgan's failure to pursue that appeal constitutes a failure to exhaust his administrative remedies. The City further argues that Morgan failed to

exhaust his administrative remedies when Morgan did not apply for a conditional use permit. Morgan responds by asserting that this declaratory judgment is "not the type of case" which must be presented to the Board of Zoning Appeals. In addition, Morgan claims that he was not required to apply for a conditional use permit because applying for a conditional use permit would have been highly prejudicial to his claim of a nonconforming use.

According to K.S.A. 12-759(d), "[a]ppeals to the board of zoning appeals may be taken by any person aggrieved, or by any officer of the city, county or any governmental agency or body affected by any decision of the officer administrating the provisions of the zoning ordinance or resolution." It is uncontroverted that Morgan did not appeal to the Board of Zoning Appeals and that Morgan did not apply for a conditional use permit.

In *Zarda v. State*, 250 Kan. 364, 368-69, 826 P.2d 1365 (1992), the Kansas Supreme Court commented:

"Where there are no issues raised which lend themselves to administrative determination and the only issues present either require judicial determination or are subject to judicial de novo review, it follows that plaintiffs should be permitted to seek court relief without first presenting the case to the administrative agency."

Accord *In re Tax Application of Lietz Constr. Co.*, 273 Kan. 890, 906, 47 P.3d 1275 (2002).

In *Goodwin*, 244 Kan. 28, the Kansas Supreme Court addressed a similar exhaustion of remedies issue. In 1983, the Goodwins purchased two tracts of land which were zoned as residential. Thereafter, the Goodwins operated a fill dirt business on the property. In 1984, the director of the City Planning Division and other City employees notified the Goodwins that their property was in violation of the city zoning ordinances. In response, the Goodwins filed a lawsuit, alleging that the operation of their business was a lawful nonconforming use. On appeal to the Kansas Supreme Court, the City argued that the district court lacked jurisdiction because the Goodwins had failed to exhaust their administrative remedies. The court quickly rejected the City's arguments by stating:

"Were the issue the reasonableness of the zoning, it would involve the City's legislative enactment, which requires exhaustion of administrative remedies before the courts acquire jurisdiction. However, the issue here is whether the Goodwins have a vested right to continue their selling of fill dirt in an area zoned residential under the theory of nonconforming use. This issue is judicial rather than legislative and thus requires no exhaustion of administrative remedies." 244 Kan. at 29-30.

In the case at bar, Morgan is seeking a determination of whether he has a vested right to operate a drinking establishment under a theory of nonconforming use. Based on *Goodwin*, this issue raises a judicial question and, therefore, does not require the exhaustion of administrative remedies. In addition, the City offers no authority for requiring Morgan to apply for a conditional use permit. Requiring Morgan to apply for a conditional use permits seems to be inconsistent with Morgan's assertion of nonconforming use. As a result, the district court did not err by rejecting the invitation to dismiss Morgan's lawsuit for failing to exhaust administrative remedies.

### Neighboring landowners

Last, the City cross-appeals and claims that the district court should have required Morgan to join the neighboring landowners in this action. The City argues that the neighboring landowners have an "interest which would be affected by the declaration sought by [Morgan]." As such, the City maintains that the neighboring landowners were necessary parties, who should have been joined pursuant to either K.S.A. 60-1712 or K.S.A. 60-219(a). Based on our affirming the granting of the summary judgment, we need not take up this issue.

Affirmed.