NOT DESIGNATED FOR PUBLICATION

No. 121,649

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JOSEPH W. LAMBERT and SHARON L. LAMBERT,
*Appellants*,

v.

CITY OF LEAWOOD, KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; DAVID W. HAUBER, judge. Opinion filed September11, 2020. Affirmed.

*John M. Duggan* and *Andrew I. Spitsnogle*, of Duggan Shadwick Doerr & Kurlbaum LLC, of Overland Park, for appellants.

*Michael K. Seck*, of Fisher, Patterson, Sayler & Smith, LLP, of Overland Park, for appellee.

Before GREEN, P.J., ATCHESON and GARDNER, JJ.

PER CURIAM: After Joseph and Sharon Lambert lost their house to a fire in December 2017, they sought permission from the City of Leawood to build a significantly larger replacement home on their lot. The City refused because the dwelling would not comply with the residential zoning restrictions. The Lamberts filed a declaratory judgment action in Johnson County District Court on the grounds that their original house was a protected nonconforming use under zoning changes adopted in 2010 and 2017, so they should be able to apply that protection to their proposed replacement. They also submitted the City improperly enacted the restrictions, rendering them

1

unenforceable. On cross-motions for summary judgment, the district court sided with the City, and the Lamberts have appealed. Cutting through various procedural thickets to the Lamberts' advantage, we find the district court ruled correctly on the merits and, therefore, affirm.

FACTUAL AND PROCEDURAL HISTORY

The Lamberts bought an undeveloped lot in Leawood in 1992 and built the two-story house that burned down 25 years later. When it was built, the house conformed to the zoning restrictions applicable to that area of Leawood. In 2010, the City adopted changes to the R-1 residential zoning classification covering the Lamberts' property and the surrounding lots. The amendments restricted the height and square footage requirements for houses in ways the Lamberts' home did not meet. Because the home complied with the previous requirements, it was considered a permissible nonconforming use, so the Lamberts did not have to alter the structure. In November 2017, the City adopted a zoning ordinance repealing the 2010 ordinance. The replacement retained the relevant restrictions from the 2010 ordinance and added ones having no bearing on the Lamberts' legal claims.

After the December 2017 fire, the Lamberts submitted a rebuilding plan to the City. Their proposed replacement house was considerably larger and had a substantially different design than their original two-story home. City officials declined to approve the plan because it violated the existing R-1 residential zoning restrictions. But they agreed the Lamberts could build a new house that substantially matched the size and style of their original house. The Lamberts applied to the City's board of zoning appeals for a variance that would allow them to build their replacement residence as designed. The board declined to grant them a variance.

2

The Lamberts then filed their declaratory judgment action against the City. Their suit did not attack the zoning board's decision and instead sought a determination they could build their replacement home as a continuation or extension of the nonconforming use that covered their original house. And the suit alleged the City never validly enacted the restrictions prohibiting their rebuilding plan.

The Lamberts and the City both filed motions in the district court seeking summary judgment. They submitted a stipulation covering many of the relevant facts and provided documentary evidence supporting additional facts recited in their respective motions and memorandums. The district court filed a lengthy order in July 2019 granting the City's motion for summary judgment. The Lamberts have appealed.

LEGAL ANALYSIS

*Summary Judgment Standards*

The standards for granting summary judgment and reviewing those judgments on appeal are well known. A party seeking summary judgment has the obligation to show, based on appropriate evidentiary materials, there are no disputed issues of material fact and judgment may, therefore, be entered in its favor as a matter of law. *Trear v. Chamberlain*, 308 Kan. 932, 935, 425 P.3d 297 (2018); *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 900, 220 P.3d 333 (2009). In essence, the movant argues there is nothing for a jury or a trial judge sitting as fact-finder to decide that would make any difference. The party opposing summary judgment must then point to evidence calling into question a material factual representation made in support of the motion. *Trear*, 308 Kan. at 935-36; *Shamberg*, 289 Kan. at 900. If the opposing party does so, the motion should be denied so a fact-finder may resolve that dispute.

In ruling on a summary judgment request, the district court must view the evidence most favorably to the party opposing the motion and give that party the benefit of every reasonable inference that might be drawn from the evidentiary record. *Trear*, 308 Kan. at 935-36; *Shamberg*, 289 Kan. at 900. An appellate court applies the same standards in reviewing the entry of a summary judgment. *Trear*, 308 Kan. at 936. Because entry of summary judgment amounts to a question of law—it entails the application of legal principles to uncontroverted facts—an appellate court owes no deference to the trial court's decision to grant the motion and review is unlimited. *Adams v. Board of Sedgwick County Comm'rs*, 289 Kan. 577, 584, 214 P.3d 1173 (2009); *Golden v. Den-Mat Corp.*, 47 Kan. App. 2d 450, 460, 276 P.3d 773 (2012).

Where, as here, each party has filed a motion for summary judgment, the district court has no broader authority to grant one of the motions. Each motion must be separately and independently reviewed using the standards we have outlined. *Wheeler v. Rolling Door Co.*, 33 Kan. App. 2d 787, 790-91, 109 P.3d 1255 (2005); *Jones v. Noblit*, No. 100,924, 2011 WL 4716337, at *1 (Kan. App. 2011) (unpublished opinion). In short, the filing of cross-motions does not extend to the district court a privilege to decide a case on summary judgment. Neither the City nor the Lamberts suggest there are disputed facts lurking in the record that precluded resolution of their legal dispute without a trial. We, too, see no material disputes about the relevant facts, meaning the controlling issues could be decided as matters of law and, in turn, summary judgment was procedurally proper.

*City's Claimed Time Bar:  We Defer*

The City contends the Lamberts' action is statutorily barred because it was not filed within 30 days after the zoning changes were adopted in 2010 and 2017 and relies on K.S.A. 12-760(a) to support that contention. The statute permits "any person aggrieved" by "the final decision of the city or county" to sue in the district court within

4

30 days for a determination of "the reasonableness of such final decision." K.S.A. 12-760(a). Neither K.S.A. 12-760 nor the companion statutes on zoning regulations define what constitutes a final decision triggering the 30-day limitation period.

The Lamberts make two points specific to their judicial challenge. First, they filed their action within 30 days after the municipal zoning board denied their request for a variance allowing them to build their new house. But, as we have said, the Lamberts don't contest that decision in their suit. They do, however, attack the validity of the process the City used to give notice of the 2010 and 2017 ordinances changing the R-1 residential zoning classification. If the ordinances were not validly enacted, they have no legal force. The Lamberts argue they can raise that sort of defect at any time, so long as they have been adversely affected by the City's formal application of the ordinances.

The parties' briefing also suggests some tension in how K.S.A. 12-760(a) should be construed. In *St. John v. City of Salina*, 9 Kan. App. 2d 636, 636-37, 639, 684 P.2d 464 (1984), this court held the comparable 30-day time limit in K.S.A. 12-712, the predecessor to K.S.A. 12-760(a), applied to both the reasonableness of a municipality's zoning decision and any procedural irregularities in reaching the decision. But the Lamberts point out that in *Barnes v. Board of Cowley County Comm'rs*, 293 Kan. 11, 17-18, 259 P.3d 725 (2011), the Kansas Supreme Court recognized similar language in K.S.A. 19-223, governing challenges to "any decision" of a board of county commissioners and setting a 30-day period for seeking judicial review, applies to judicial and quasi-judicial determinations rather than to legislative enactments. A municipality acts in a legislative capacity in making some zoning determinations and in a quasi-judicial capacity in making others. When a city council or county commission enacts a broad zoning or land use plan, it acts in a legislative capacity. *Golden v. City of Overland Park*, 224 Kan. 591, Syl. ¶ 1, 584 P.2d 130 (1978). But when a municipality considers rezoning a particular parcel or issuing a use permit or variance for a specific purpose, it engages in quasi-judicial decision-making. 224 Kan. at 597.

5

Those considerations collectively add up to a judicial puzzle in determining what time limitation governs the Lamberts' declaratory judgment action and when the time started running. And while we might have some abstract obligation to take a crack at solving the puzzle for the benefit of courts in future cases, we decline the opportunity. We need not decide the issue, since we otherwise affirm the district court's judgment in favor of the City. A time-bar defense would simply be another basis for doing so and, therefore, is arguably moot. We move on to the merits of the Lamberts' claims.

*Lamberts' Claimed Extension of Nonconforming Use:  We Say Not*

The Lamberts argue they have a right to build their new and substantially larger and differently configured house simply as a continuation or extension of the nonconforming use that attached to their original house. But their argument misperceives the nature of a nonconforming use and doesn't find support in *Crumbaker v. Hunt Midwest Min., Inc.*, 275 Kan. 872, 69 P.3d 601 (2003), a case on which they heavily rely.

Municipalities may exercise their general police powers to regulate land use through reasonable zoning regulations promoting the public good. *Village of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365, 387-88, 47 S. Ct. 114, 71 L. Ed. 303 (1926); *Houston v. Board of City Commissioners*, 218 Kan. 323, Syl. ¶ 9, 543 P.2d 1010 (1975). The fundamental purpose is to prevent discordant development to the detriment of the overall quality of a community and the general welfare of people who live or work there. Through zoning plans, a municipality can, for example, preclude landowners from building factories adjacent to residential subdivisions. Zoning regulations may also regulate the type, size, and density of residential uses, so some areas may be limited to single-family dwellings with specific restrictions on height, square footage, setbacks, and similar characteristics. The touchstone is reasonableness with considerable judicial deference to the municipalities when they enact broad zoning and land use plans—an

6

exercise of the expansive legislative authority granted elected officials. See *City of Colby v. Hurtt*, 212 Kan. 113, 115-16, 509 P.2d 1142 (1973). Municipalities enjoy the concomitant authority to revise zoning plans to accommodate changing community needs and to grant specific exceptions or variances—all undertaken with the same sense of reasonableness.

By the same token, zoning and other land use regulation cannot be so restrictive as to be confiscatory by depriving owners of the fair enjoyment of their real property. Undue restrictions may result in an impermissible (and compensable) governmental taking under the Fifth Amendment to the United States Constitution incorporated and applied to local governments through the Fourteenth Amendment. See *Zimmerman v. Board of Wabaunsee County Comm'rs*, 293 Kan. 332, 345-46, 264 P.3d 989 (2011). Historically, municipalities initially enacting zoning regulations or broad revisions to existing regulations have allowed landowners to continue uses that would otherwise be prohibited. Those exemptions are commonly called nonconforming uses. See *Crumbaker*, 275 Kan. at 881 (defining and discussing origins of nonconforming uses). As a deviation from a reasonable zoning plan, any nonconforming use is strictly limited with the expectation that in due course it will cease and the property will then be used in a permissible manner. 275 Kan. at 881-82; *Goodwin v. City of Kansas City*, 244 Kan. 28, 32, 766 P.2d 177 (1988). As both *Crumbaker* and *Goodwin* recognize, a landowner cannot expand a nonconforming use. That is, the exemption is limited to the use at the time of the zoning regulation; it is not a license to engage in *any* nonconforming use in the future. *Crumbaker*, 275 Kan. at 882 (recognizing limit on landowner's right "to expand the use"); *Goodwin*, 244 Kan. at 32 (recognizing landowner generally has no right "to change, expand, or to recommence after abandonment" a nonconforming use).

Applied here, the rule gave the Lamberts a vested right to maintain their original house as a particular nonconforming use predating the zoning changes in 2010 and 2017. But they did not have a right to a new and demonstrably more expansive nonconforming

7

use. Their proposed replacement house represented a materially greater deviation from the zoning restrictions, especially in square footage, and, like the original structure, would have been too tall. The replacement, therefore, did not constitute a valid nonconforming use, since it did not predate the zoning changes. See *Crumbaker*, 275 Kan. at 882 (nonconforming use must exist at time of zoning restriction).

The Lamberts contend *Crumbaker* supports their position, but they mistakenly rely on a narrow application of the nonconforming use rule for quarries and mining operations. As outlined in *Crumbaker*, the "diminishing asset doctrine" treats the removal of rock or mineral resources from the land as part of a commercial enterprise that constitutes the nonconforming use, so the owner may quarry or mine the entirety of the tract consistent with that exempt use. 275 Kan. at 882. The doctrine, however, has no readily apparent analogous application to the zoning and use of land for single-family residences. Even if the residential property were rented and, thus, represented a commercial enterprise, it doesn't follow that the land itself is, in effect, a consumable asset of the business. Moreover, applied to residential property, the doctrine would simply create an artificial bypass of the customary limitations on nonconforming uses disserving the public good promoted through zoning regulations.

Alternatively, the Lamberts argue they had some sort of statutorily vested right in the zoning of the land from the time it was developed and cite K.S.A. 2019 Supp. 12-764. The statute, however, is inapposite. By its terms, K.S.A. 2019 Supp. 12-764 grants a developer a five-year window to undertake a plan to build single-family homes on a platted subdivision. The vested development right runs from the filing of the plat and expires if "construction is not commenced" within that time. K.S.A. 2019 Supp. 12-764(a)(1).

The statute simply speaks to a developer's exclusive right to develop a platted tract. It has nothing to do with the details of a municipality's zoning regulations or some

preservation of regulations that may have been in effect when a residential lot was platted or developed. And although the Lamberts had a vested right in their original home as a specific nonconforming use, they had no right to static zoning regulations dating from their acquisition of the property or its earlier platting. *Zimmerman*, 293 Kan. at 347 ("We begin our analysis by agreeing with the Board's assertion that there is no vested right in the continuity of zoning in a particular area so as to preclude subsequent amendment, *i.e.*, no right to have the existing zoning ordinance continue unchanged.").

The Lamberts have failed to show they had some continuing protected right to a nonconforming use that attached to the dwelling they proposed to build to replace their home that burned.

*Lamberts' Claim of Faulty Enactment:  We Find No Ultimate Victory*

The Lamberts offer an alternative line of argument to support their claimed right to build their replacement house:  They say the City improperly adopted the zoning changes in 2010 and 2017, so those ordinances never took effect. In turn, the earlier zoning regulations remained in effect, and they would have permitted the home they wish to build on their lot. For purposes of the appeal, we assume the latter proposition to be correct and focus on the validity of the zoning ordinances.

In 2010, the City revised the R-1 residential zoning classification to include stricter limits on height and square footage, especially for remodeled or rebuilt homes. As we said, the Lamberts' existing home did not meet those restrictions but qualified as a permissible nonconforming use. In 2017, the City repealed the 2010 ordinance and replaced it with one retaining those restrictions and making other revisions that are immaterial here.

9

When a municipality intends to adopt a comprehensive zoning plan or to amend an existing plan, it must give public notice. Notice requirements for changes to an existing plan are set out in K.S.A. 2019 Supp. 12-757. For any amendment, the municipality has to provide notice by publication. If the change "is not a general revision of the existing regulations and affects specific property," the municipality also has to provide notice by mail to nearby property owners. K.S.A. 2019 Supp. 12-757(b). The Lamberts contend the City gave improper publication notice and failed to give required mail notice of both the 2010 and 2017 changes to the zoning code. We consider each of the ordinances.

The 2010 ordinance imposed stricter height and square footage limits, among other changes, to all property zoned R-1 residential. The City gave notice by publication but not by mail. Contrary to the Lamberts' argument, mail notice was not required under K.S.A. 2019 Supp. 12-757(b). The revision was a general one to the R-1 residential classification affecting all property covered by that classification. The amendment was not confined to a specific lot or a set of contiguous lots. Nor did it change the zoning classification of any property. The Lamberts' argument for mail notice ignores the plain statutory language of K.S.A. 2019 Supp. 12-757(b) and the breadth of the 2010 ordinance.

The Lamberts do not dispute the City timely published a notice in an appropriate newspaper. But they contend the content of the notice was statutorily insufficient. First, they say the notice lacked a legal description or some other adequate designation of the affected property required in notices for nongeneral changes. That argument fails because the amendment of the R-1 classification was a general change. The argument itself tilts toward the self-defeating. Under the Lamberts' interpretation, the notice would have had to include a legal description of every lot zoned R-1 residential or otherwise included a description of the boundaries of all of the land classified R-1 residential throughout the city. That's not a sensible interpretation of the notice requirements and would likely result in distinctly unwieldy notices of numbing length. A notice identifying a proposed change

10

to an identified zoning classification is consistent with the statutory language and adequate to its purpose, since landowners fairly can be expected to know or have reason to know the zoning classification of their property.

The Lamberts also contend the published notice of the 2010 amendments was deficient even for a general zoning change. The notice of a general amendment must include "a statement regarding the proposed changes." K.S.A. 2019 Supp. 12-757(b). The Lamberts say the notice lacked such a statement. We disagree. The notice stated the amendment "pertain[ed] to residential height and massing." Although the statement could not be characterized as effusive and the term "massing" seems jargony, it does tersely impart the subjects of the proposed changes. Property owners would be put on notice and could inquire further if they were at all interested in the height and size restrictions under the R-1 residential zoning classification. The statute requires no more; it does not call for a full, or even detailed, description.

In short, we find the 2010 ordinance amending the R-1 residential zoning ordinance was properly noticed.

The Lamberts launch an identical attack on the 2017 ordinance that repealed and replaced the 2010 ordinance. As we have indicated, the 2017 ordinance replicated the restrictions from the 2010 ordinance that turned the Lamberts' original house into a nonconforming use and made other changes. We, therefore, likewise find the 2017 amendment to be a general one that did not require mail notice to particular property owners.

But the published notice does not contain anything that could be characterized as a "statement" of the proposed changes. The notice simply refers generically to an amendment of the ordinance without any further description. The very existence of the proposed amendment conveys that some change is being sought—there would be no

11

obvious purpose to an amendment making no changes. The statutory requirement for a "statement" of the changes requires something more in the published notice than merely identifying the ordinance being amended. We, therefore, credit the Lamberts' point as to the 2017 amendment for purposes of this appeal. And we similarly presume, as they contend, the omission rendered the notice legally ineffective and the ordinance void for lack of sufficient notice.

The victory we have presumed for the Lamberts on this point is an empty one. If the lack of notice voids the 2017 ordinance, it does so as to the whole of the measure, including the repeal of the 2010 ordinance. The 2010 ordinance (and its restrictions) would then remain in effect. The Lamberts' ultimate legal position is no better under the 2010 ordinance than it would be under the 2017 ordinance. Under either ordinance, their original house was a nonconforming use that couldn't be extended or expanded to cover their proposed replacement.

The Lamberts make a separate argument under K.S.A. 2019 Supp. 12-757(c)(2), governing notice when a municipality seeks to impose a "more restrictive zoning classification" on at least 10 lots or tracts with 5 or more owners. A municipality must give both general notice by publication of the proposed change in zoning classification and mail notice to the affected owners. But K.S.A. 2019 Supp. 12-757(c)(2) does not apply here, since the City did not reclassify the Lamberts' property or any other property from the R-1 residential zoning classification to some other use.

*Lamberts' Claim for Lack of Uniform Zoning Regulation: We See No Merit*

As a tertiary line of attack, the Lamberts argue that the 2010 and 2017 R-1 residential zoning classifications violate K.S.A. 12-756(a) because they do not operate uniformly by distinguishing between original construction and the remodeling or rebuilding of existing structures and by imposing certain building limits only when a lot

has two-story houses on both sides. The City questions whether this argument was properly raised and preserved in the district court. The Lamberts did not identify it among the specific claims they enumerated in their petition. Nor did they present it in their motion and supporting memorandum for summary judgment. They first mentioned it in their reply to the City's cross-motion for summary judgment. That is, to be sure, late in the game.

We defer the City's asserted procedural bar and assume the Lamberts sufficiently raised the point, although we have real doubts. A reply brief or memorandum should be a rebuttal to the opposing parties' legal arguments—not a vehicle for asserting new bases for affirmative relief, a practice lurching toward disfavored sandbagging and inhibiting the opportunity for fair response. Cf. *Seaboard Corp. v. Marsh Inc.*, 295 Kan. 384, 422, 284 P.3d 318 (2012) (appellate court declines to consider argument raised for first time in reply brief); *CCA Recordings 2255 Litigation v. United States*, No. 19-cv-2491-JAR, 2020 WL 4284222, at *3 n.20 (D. Kan. 2020) (unpublished opinion); *Latham v. High Mesa Communications*, No. 17-cv-02118-JLK-GPG, 2020 WL 1626976, at *2 (D. Colo. 2020) (unpublished opinion) (court disregards argument first raised in reply memorandum on summary judgment as impermissible "'sandbag[ging]'" of opponent).

Apart from any procedural bar, the Lamberts' argument fails on the merits on a plain reading of the statute. Under K.S.A. 12-756(a), the uniformity requirement is a qualified one. The relevant language states: "Except as provided in the zoning regulations, all such regulations shall be uniform for each class or kind of building or land uses throughout each district." K.S.A. 12-756(a). Here, the zoning restrictions the Lamberts complain about appear in the ordinances outlining the R-1 residential zoning classification. So the restrictions creating the lack of uniformity are contained in the applicable zoning regulations, conforming to the explicit requirement in K.S.A. 12-756(a). The point lacks merit.

*Conclusion*

Having considered the Lamberts' arguments for reversing the district court, we find no basis requiring us to set aside the summary judgment in favor of the City of Leawood.

Affirmed.